# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1998-KA-01010-SCT

*BEVERLY ANN McDUFF a/k/a BEVERLY HURST*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/08/1998 |
| TRIAL JUDGE: | HON. GEORGE B. READY |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | T. K. MOFFETT |
| | GEORGE S. WHITTEN, JR. |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  DEWITT T. ALLRED, III |
| DISTRICT ATTORNEY: | ROBERT L. WILLIAMS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 05/04/2000 |
| MOTION FOR REHEARING FILED: | 5/22/2000; denied 8/3/2000 |
| MANDATE ISSUED: | 8/10/2000 |

### EN BANC.

### PRATHER, CHIEF JUSTICE, FOR THE COURT:

### INTRODUCTION

¶1. The Court is asked to determine the constitutionality of Miss. Code Ann. § 63-11-8 (1998), which provides that any driver involved in an automobile accident from which a fatality occurs shall have his blood drawn and tested for the presence of alcohol or drugs, regardless of whether probable cause exists to believe that the driver was under the influence of alcohol or drugs.

### STATEMENT OF THE CASE

¶2. On July 11, 1996, Beverly McDuff was traveling north on Highway 61 in DeSoto County when she lost control of her Toyota Camry, crossed the center line, and struck an on-coming southbound vehicle, a Pontiac 6000. As a result of this accident, the driver of the Pontiac was killed, and McDuff was injured.

¶3. McDuff was treated on the scene by E.M.T. Michael Hancock (Hancock), who subsequently transported her to the Regional Medical Center in Memphis, TN (hospital). Prior to leaving the scene, Hancock was given a blood alcohol kit (BAC kit) by a law enforcement officer with orders that McDuff's blood be drawn at the hospital for the purpose of testing for alcohol and drugs. Hancock did not know the name of the officer who gave him the BAC kit or for which department he or she worked. The identity of

this officer has never been ascertained.

¶4. Just prior to McDuff being taken to the hospital, Sgt. William Williamson (Williamson) of the Mississippi Highway Patrol arrived at the scene. Although he did not see or talk with McDuff at the scene, he did speak with Richard Ramsey (Ramsey), a motorist who had been following McDuff for approximately 8 to 9 miles before the accident. After McDuff had left the scene, Ramsey informed Williamson that he observed McDuff driving in an erratic manner prior to the accident.

¶5. At the hospital, McDuff was treated by nurse Harry Coder (Coder). Hancock gave Coder the BAC kit, and while Coder was "drawing [their] own lab on [McDuff]" he filled two (2) tubes from the kit and gave them back to Hancock. At this point, McDuff had not been placed under arrest. Coder testified that he never told McDuff that he was drawing blood pursuant to law enforcement orders, and he obviously never obtained her consent to do so.

¶6. Upon completion of his preliminary investigation, Williamson left the scene of the accident and went to the hospital. At this point, he had yet to have any contact with McDuff. When Williamson arrived at the hospital, he met Hancock at the back door of the hospital, and Hancock gave him the BAC kit containing the two (2) tubes of McDuff's blood. After receiving McDuff's blood, Williamson went into the hospital and asked a nurse to draw McDuff's blood again so that he could personally witness the act. The nurse refused. Williamson testified that he asked for the second blood test for two (2) different reasons. One, he felt he had probable cause to believe that McDuff had been driving under the influence of alcohol or drugs, said belief being based on both Ramsey's statement that McDuff had been driving erratically prior to the accident, and also on the fact that his investigation revealed that McDuff's crossing the center line of the highway caused the accident. The trial court ruled that Williamson indeed had probable cause to request the second test. Additionally, he asked for the second test based on § 63-11-8, which mandates that blood be taken from any driver involved in a fatal accident, regardless of the existence of probable cause to believe that alcohol or drugs were involved. Williamson subsequently had the BAC kit that he received from Hancock transported to the state crime lab for testing. Crime Lab tests showed McDuff's blood samples to contain .23% ethyl alcohol, well over the legal limit. On November 25, 1996, she was indicted on charges of negligently causing death while driving under the influence of alcohol (D.U.I.).[1]

¶7. At McDuff's trial, over her objection, the Crime Lab test results were introduced into evidence. After all the evidence was presented, she was convicted, and sentenced to a term of ten (10) years imprisonment, with five (5) years suspended. McDuff posted a $100,000 appeal bond, and now appeals her conviction, raising numerous assignments of error. This Court will only address two of the issues raised by McDuff, as the others are not dispositive on this case.

## ISSUES

**I. Under both the Fourth Amendment to the United States Constitution and Article 3, § 23 of the Mississippi Constitution, Miss. Code Ann. § 63-11-8 is null and void because it mandates search and seizure absent probable cause or consent.**

¶8. The central issue in this case is the admissibility of the blood test evidence. This evidence was collected at the direction of an unidentified law enforcement officer at the accident scene. McDuff asserts that the officer lacked probable cause to require her to be subjected to a warrantless blood test. The officer who ordered Hancock to have McDuff's blood drawn and tested was never identified, and he obviously never

testified at trial. Therefore, the record is void of any probable cause justifying such an order. McDuff was not under arrest at the time her blood was drawn, nor did she give consent to have her blood drawn *for law enforcement purposes*, nor was a search warrant obtained. Therefore, when Coder drew two (2) tubes of blood from McDuff in response to the law enforcement request as relayed by Hancock, this evidence was acquired not incident to a lawful arrest and without probable cause or a warrant or her explicit consent. Williamson subsequently developed probable cause to believe that McDuff may have been intoxicated; however, this occurred after McDuff was en route to the hospital with orders to have her blood drawn. Armed with the probable cause he eventually developed, Williamson unsuccessfully attempted to have McDuff's blood drawn again in his presence at the hospital.

¶9. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated..." U.S. Const. Amend. IV. "The people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search..." Miss. Const. art 3, §23 (1890). Miss. Code Ann. § 63-11-8 (1), titled "Mandatory blood test for operators involved in fatal accidents" states, in relevant part, that "[t]he operator of any motor vehicle involved in an accident that results in a death shall be tested for the purpose of determining the alcohol content or drug content of such operator's blood, breath or urine." Unlike other statutes under Mississippi's Implied Consent laws, this statute does not require an officer to have probable cause to believe that a driver may be intoxicated before said officer can require a chemical test. Under § 63-11-5, an officer may test a driver when "such officer has reasonable grounds and probable cause to believe that the person was driving...while under the influence . . .". Under § 63-11-7, when a driver is unconscious, dead, or otherwise incapable of refusing a test as the result of an accident, that driver will be subject to a blood test "if the arresting officer has reasonable grounds to believe the person to have been driving...while under the influence..."

¶10. "A search made without warrant and not incident to a lawful arrest is not illegal *per se*, but if the fruits of the search are to withstand the exclusionary rule, the search must have been predicated on probable cause."*Hailes v. State*, 268 So. 2d 345, 346 (Miss. 1972). "The degree of intrusion necessary in the taking of a blood sample is sufficient to require the presence of probable cause. The Fourth Amendment prohibition against unreasonable search and seizure applies when an intrusion into the body--such as a blood test--is undertaken without a warrant, absent an emergency situation." *Cole v. State*, 493 So. 2d 1333, 1336 (Miss. 1986) (quoting *Schmerber v. California*, 384 U.S. 757, 770-71, 86 S.Ct. 1826, 1835-36, 16 L.Ed.2d 908, 919-20 (1966)).

¶11. In *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), the United States Supreme Court created a "special needs" exception to the probable cause requirement. The Court in *Skinner* considered a federal statute requiring railroad employees to submit to breath, blood and urine testing in certain situations, absent probable cause. The statute was found to be constitutional because it furthered the government's compelling interest in promoting rail safety, and because railway employees have a diminished expectation of privacy. *Skinner*, 489 U.S. at 634, 109 S.Ct. at 1422, 103 L.Ed.2d at 670.

¶12. Although the constitutionality of § 63-11-8 has never been considered by this Court, several other states have considered similar statutes. The Pennsylvania Supreme Court, in declining to apply the limited exception set forth in *Skinner*, struck down a statute which provided:

[a]ny person who drives...a motor vehicle in this Commonwealth shall be deemed to have given

consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcohol content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving...a motor vehicle which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

*Commonwealth v. Kohl*, 532 Pa. 152, 615 A.2d 308 (1992). That court noted that the underlying purpose of the statute was to obtain evidence for use in criminal prosecutions, and stated "[n]o matter how compelling, however, the Commonwealth's interest in securing evidence that a driver is operating a vehicle under the influence of alcohol or drugs does not evince a special need that would justify departure from the probable cause requirements of the Fourth Amendment." *Kohl*, 532 Pa. at 164, 615 A.2d at 314. In similar fashion, the Illinois Supreme Court struck down a statute providing:

Any person who drives or is in actual control of a motor vehicle upon the public highways of this State shall be deemed to have given consent to a breath test using a portable device as approved by the Department of Public Health or to a chemical test or tests of blood, breath, or urine for the purpose of determining the alcohol or other drug content of such person's blood if there is probable cause to believe that such person was the driver at fault, in whole or in part, for a motor vehicle accident which resulted in the death or personal injury of any person.

*King v. Ryan*, 153 Ill.2d 449, 607 N.E.2d 154, 180 Ill.Dec. 260 (1992). That court held "[i]t is clear that the State has a compelling interest in protecting its citizens from the hazards caused by intoxicated drivers...However, [the statute] is also intended to gather evidence for use in a criminal proceeding. Because [the statute] is designed to further this law enforcement purpose, we do not believe it falls within the special needs exception to the probable cause requirement." *King*, 153 Ill.2d at 461-462, 607 N.E.2d at 160, 180 Ill.Dec. at 266.

¶13. The State, in its brief, essentially admitted that § 63-11-8 is unconstitutional when it wrote "[a]ppellee respectfully asks this Court to hold clearly that evidence inadmissible under the probable-cause requirement of the Fourth Amendment and Section 23, Mississippi Constitution of 1890 is not made admissible by operation of § 63-11-8."

¶14. The only court found to have upheld a statute which is somewhat similar to § 63-11-8 is the Maine Supreme Judicial Court, which, in the case of *State v. Roche*, 681 A.2d 472 (Me. 1996) upheld a statute providing in pertinent part:

[E]ach operator of a motor vehicle involved in a motor vehicle accident shall submit to and complete a chemical test to determine that person's blood-alcohol level or drug concentration by analysis of the person's blood, breath, or urine if there is probable cause to believe that a death has occurred or will occur as a result of the accident...[t]he result of a test taken pursuant to this paragraph is admissible at trial if the court, after reviewing all the evidence regardless of whether the evidence was gathered prior to, during, or after the administration of the test, is satisfied that probable cause exists, independent of the test result, to believe that the operator was under the influence of intoxication of liquor or drugs or had an excessive blood alcohol level.

¶15. We find the holdings of the Pennsylvania and Illinois Supreme Courts to be persuasive. The Maine Supreme Judicial Court's holding in *Roche* is not relevant to our case, as the statute at issue in that case

contained a probable cause provision, and § 63-11-8 contains no such provision.

¶16. Accordingly, we hold that Miss. Code Ann. § 63-11-8 is unconstitutional, as it requires search and seizure absent probable cause. Although the State undoubtedly has a significant interest in preventing accidents involving alcohol and drugs on its roadways, this statute does nothing to further that interest. Miss. Code Ann. § 63-11-8 is not applicable prior to the occurrence of a serious accident; therefore, it is prosecutorial, not preventive in nature. Furthermore, the tragic fact that a fatality arises out of a motor vehicle accident is in no way, standing alone, an indicator that alcohol or drugs were involved. It is not overwhelmingly burdensome for an officer to establish probable cause to believe that a driver may be under the influence of alcohol or drugs (i.e. the smell of alcohol on the driver's breath, erratic driving, alcohol containers or drug paraphanalia in plain sight in the vehicle, etc.). Therefore, it is not necessary to circumvent the constitutionally mandated probable cause requirement in order to aid law enforcement officials in achieving an already achievable burden.

¶17. The State cites *Ashley v. State*, 423 So. 2d 1311 (Miss. 1982) for its contention that the introduction of McDuff's blood test results at trial was proper even if § 63-11-8 is unconstitutional. In that case, Ashley rear-ended a stopped car, causing the death of one of its passengers. The officer investigating the accident eventually developed probable cause to believe that Ashley was intoxicated. While the officer was still at the accident scene, and after Ashley had been transported to the hospital, the officer contacted the hospital with instructions to perform a blood-alcohol test on Ashley. When the officer finally arrived at the hospital, he was informed that a blood test had already been performed on Ashley. This test was ordered by Ashley's physician for diagnostic purposes, and when the test was ordered, this doctor had no knowledge of the law enforcement request that such a test be performed. The officer did not order another blood test because one had already been done, and he knew the results of said test. The trial court overruled Ashley's pretrial motion to suppress the results of the blood-alcohol test, which showed him to be intoxicated at the time of the accident. In reviewing the record, this Court found that based on the officer's investigation "there existed probable cause for arrest and also probable cause to search [Ashley] by requiring him to submit to the withdrawal of blood from his body to be tested." *Ashley*, 423 So. 2d at 1313. This Court upheld Ashley's conviction, holding that "where the state is justified in requiring a blood test to determine the alcoholic content in a suspect's blood, and such test has in fact been performed, *although for diagnostic and not law enforcement purposes*, the state is entitled to the benefit of the test results. It would have been unduly repetitive to require the officer to have blood withdrawn from [Ashley] a second time for testing. This would have required [Ashely] to be subjected to another intrusion of his body. Any additional tests were unnecessary because one had already been performed, and the results were available."*Ashley*, 423 So.2d at 1314 (emphasis added).

¶18. The case sub judice, however, is different from *Ashley*. At the point when nurse Coder drew McDuff's blood in response to the law enforcement request, the State was not "justified in requiring a blood test to determine the alcoholic content in [McDuff's] blood." Under *Ashley*, the probable cause that Williamson eventually developed entitled him to obtain the blood drawn by the hospital *for diagnostic purposes* (i.e. the blood which Coder drew "for [their] own lab on [McDuff]"). However, Williamson's probable cause did not entitle him to obtain the blood drawn specifically as a result of a law enforcement request (i.e. the two (2) tubes Hancock gave Coder). In other words, his probable cause could not retroactively cure the prior unlawful search and seizure which occurred when Coder drew the extra two (2) tubes of blood. *See Isaacks v. State*, 350 So.2d 1340, 1343 (Miss. 1977).

¶19. We hold that the drawing of the two (2) tubes of McDuff's blood, done specifically at the request of law enforcement, was improper because this was done without probable cause, a warrant or consent, and was not incident to a lawful arrest. This violated both the Fourth Amendment to the United States Constitution and Article 3, § 23 of the Mississippi Constitution. Consequently, the trial court abused its discretion in allowing the results of the blood test into evidence, and in doing so committed reversible error. "Admission of evidence is within the discretion of the trial judge. That discretion must be exercised within the scope of the Mississippi Rules of Evidence and reversal will only be had when an abuse of discretion results in prejudice to the accused." *Parker v. State*, 606 So.2d 1132, 1137-38 (Miss. 1992).

### II. Miss. Code Ann. § 63-11-8 is invalid because it compels a person to give evidence against himself to be used to criminally prosecute him, in violation of the Fifth Amendment to the United States Constitution and Article 3, § 26 of the Mississippi Constitution.

¶20. "In *Schmerber* (citations omitted), the U.S. Supreme Court upheld a state-compelled blood test, finding that a blood test was 'physical or real' evidence rather than testimonial evidence and therefore was unprotected by the Fifth Amendment privilege." *Ricks v. State*, 611 So. 2d 212, 215-16 (Miss. 1992). This Court has likewise held that the State may force a defendant to provide blood, hair and saliva samples."*Id.* (quoting *Willimas v. State*, 434 So. 2d 1340, 1344-45 (Miss. 1983)), *Wesley v. State*, 521 So.2d 1283, 1286 (Miss. 1988). Therefore, this assignment of error must fail.

### CONCLUSION

¶21. Because McDuff's blood was drawn without probable cause, consent, a warrant or incident to a lawful arrest, the trial court committed reversible error in admitting into evidence the results of tests performed on that blood. Therefore, the test results were inadmissible, and this Court reverses McDuff's conviction for causing the death of another while driving under the influence and remands the case to the trial court for a new trial. Under *Ashley*, the State may, upon retrial, use the blood drawn from McDuff by hospital personnel for diagnostic purposes, if this evidence is still available. However, it may not use the blood drawn specifically in response to the law enforcement request, which was made at the scene of the accident without a showing of probable cause. We also hold that Miss. Code Ann. § 63-11-8 is unconstitutional, insofar as it mandates search and seizure absent probable cause. Without a probable cause provision, this statute can not pass constitutional muster, and we suggest that the Legislature review this statute in light of this decision.

¶22. **REVERSED AND REMANDED**.

> **PITTMAN AND BANKS, P.JJ., SMITH, MILLS AND COBB JJ., CONCUR. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, J. WALLER, J., NOT PARTICIPATING.**

> McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶23. I agree that Miss. Code Ann. § 63-11-8 (1998) is unconstitutional because it does not have a probable cause provision and cannot pass constitutional muster. However, I would go further to hold that a Mississippi police officer may not request blood tests to be performed outside the state of Mississippi. Since the majority has refused to discuss this issue, I am compelled to do so myself.

¶24. In addition, while the majority finds § 63-11-8 unconstitutional, it errs in holding that upon retrial the

blood drawn from McDuff by hospital personnel in Tennessee for diagnostic purposes may be entered as evidence in Mississippi. Both the Tennessee and Mississippi (M.R.E. 503) medical privilege comes into play and only the patient can waive that privilege. See *Cotton v. State*, 675 So.2d 308, 312 (Miss. 1996); *Ashley v. State*, 423 So.2d 1311, 1315 (Miss. 1982). There is also no provision for the State to obtain the medical records outside this jurisdiction as the majority so advises the State to do. The majority's reliance on *Ashley* for this contention is unfounded. In *Ashley*, the Court only allowed the blood tests taken by hospital personnel into evidence once the privilege was waived by the appellant calling his doctor to the stand. The Court in *Ashley* stated:

> We hold that appellant waived the privilege when he called Dr. Wiggins to the stand as his own witness and the result of the test was elicited from the doctor on cross-examination without objection from the defendant.

In the present case, McDuff has in no way waived this privilege.

¶25. Even if Miss. Code Ann. § 63-11-8 were constitutional, it does not give law enforcement the authority to exercise this power out-of-state. Our subpoena power in a criminal proceeding does not go beyond our state boundaries.

¶26. Under certain circumstances, police officers have the right to arrest offenders in jurisdictions other than their own so long as that other territory is within the state pursuant to Miss. Code Ann. § 99-3-13 (1994). *See also **McLean v. Mississippi***, 96 F.2d 741 (5th Cir. 1938) (the functions of the sheriff are confined to his own county except when pursuing a fleeing offender). Outside of the state's boundaries, Mississippi police officers have powers no greater than those possessed by any citizens. That is, officers may effect a person's arrest where a felony had been committed or where a breach of the peace is being threatened or attempted,[(2)] but a citizen may not require a person to submit to chemical testing. Therefore, outside the state of Mississippi, Mississippi police officers are without the authority to require a person to submit to blood alcohol testing or order one done. If he orders it done, can the officer arrest the person in Tennessee if he refuses?

¶27. In this case, the officer could have asked McDuff to submit to a blood test, and McDuff could have either given or withheld her consent. But McDuff was never consulted as to whether she consented to have an analysis of her blood alcohol content performed. Therefore, the results should have been suppressed since the officer did not have the authority to require her to submit to blood alcohol testing outside of Mississippi.

¶28. At common law, a police officer outside his jurisdiction does not act in his official capacity and has no official authority to arrest. *Perry v. State*, 794 S.W.2d 141 (Ark. 1990); *People v. Vigil*, 729 P.2d 360, 365-66 (Colo. 1986); *State v. Hodgson*, 200 A.2d 567 (Del. Super. Ct. 1964); *People v. LaFontaine*, 705 N.E.2d 663 (N.Y. 1998); *Commonwealth v. England*, 375 A.2d 1292 (Pa. 1977); *State v. Hart*, 539 A.2d 551 (Vt. 1987); *State v. Slawek*, 338 N.W.2d 120 (Wis. Ct. App.1983); 5 Am.Jur.2d *Arrest* § 50, at 742-43; 4 Wharton's Criminal Law and Procedure § 1614, at 277 (R. Anderson ed.1957). He has only the power to make a citizen's arrest. *State v. O'Kelly*, 211 N.W.2d 589, 595 (Iowa 1973); *State v. Bickham*, 404 So.2d 929, 932 (La. 1981); Restatement (Second) Torts, § 121, cmt. a (1965). A police officer outside his territory, then, may exercise authority beyond that of a citizen only where there is explicit legislation allowing him to do so. As there is no such legislation in this state, the results of the blood alcohol test performed on McDuff without her consent should have been suppressed.

¶29. For these reasons, I concur with the holding that Miss. Code Ann. § 63-11-8 is unconstitutional. However, I dissent from the majority's failure to hold, or even discuss, that Mississippi law enforcement cannot require blood testing be done outside the state of Mississippi.

¶30. The majority is also misguided in holding that the blood drawn by hospital personnel in Tennessee can be used in a second trial pursuant to *Ashley*. The blood test results of the defendant in *Ashley* were not admitted into evidence through statute, but instead because the defendant called the doctor to the stand, thus waiving any medical privilege, including the results of his blood test. Since McDuff never waived this privilege, allowing his blood results entered into evidence at the second trial would clearly violate M.R.E. 503 which applies in criminal proceedings. *Cotton*, 675 So.2d at 312, see *Ashley*, 423 So.2d at 1314; *Keeton v. State*, 175 Miss. 631, 167 So. 68 (1936).

¶31. Accordingly, I concur in part and dissent in part.

**DIAZ, J., JOINS THIS OPINION.**

1. McDuff was indicted under Miss. Code Ann. § 63-11-30 (4). This statute has since been amended, and former subsection (4), under which McDuff was prosecuted, is now subsection (5) of the current § 63-11-30.

2. Miss. Code Ann. § 99-3-7(1)(Supp. 1999); see also *Nash v. State*, 207 So.2d 104, 107 (Miss. 1968) (sheriff who arrested accused outside of his jurisdiction on basis that car which struck decedent was owned by accused had probable cause to believe a felony had been committed, that accused was guilty party, and had right to make citizen's arrest).