938 So.2d 853 (2005)
Samuel SHAW a/k/a Samuel N. Shaw, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-IA-01462-COA.
Court of Appeals of Mississippi.
December 6, 2005.
Rehearing Denied May 30, 2006.
*855 Chuck McRae, William B. Kirksey, Minor F. Buchanan, Jackson, attorneys for appellant.
Thomas L. Kesler, David Byrd Clark, Scott E. Rogillio, attorneys for appellee.
EN BANC.
MYERS, P.J., for the Court.
¶ 1. This case presents an interlocutory appeal from the Circuit Court of Madison County, Mississippi regarding the admissibility of blood evidence taken after a two-car collision and statements given by one of the parties at the scene of the accident.

STATEMENT OF FACTS
¶ 2. On December 14, 2002, at approximately 1:23 a.m. Joey Culotta and Dr. Sam Shaw had a two-car, head-on collision on Harbor Drive in the City of Ridgeland in Madison County, after the two left Shucker's Oyster Bar. Subsequently this collision resulted in the death of Culotta. The accident involved Shaw, who was driving his Ford F-150 southbound when he collided with Culotta who was driving northbound in his Honda Accord. Culotta was accompanied by two passengers. Soon after the accident, the Ridgeland Police Department was notified that an accident had occurred and officers rapidly arrived on scene. The accident was worked by the Ridgeland Police Department, fire personnel, and American Medical Response ambulance services. The police officers involved in handling the accident included Dee Derrington, Eddie Addison, Ron Phillips, Howard Young, and John Neal, each of whom were employed by the Ridgeland Police Department. Upon their arrival at the scene, the officers determined that Culotta and his passengers had suffered substantial injuries and aided medical personnel in administering medical treatment. During this time, several officers talked with Shaw to determine the cause of the accident. It was during these conversations that Shaw indicated he was unaware of how the events transpired, as he had "blacked out" due to the head injury he sustained in the accident.
¶ 3. While conversing with the attendant officers, Shaw indicated that he remembered leaving Shucker's Oyster Bar, where he had consumed five beers, according to the officers, or up to five beers according to Shaw's account of the conversation, during approximately a two and one-half hour time period. Shaw was not placed under arrest, nor was he given a Breathalyser test, but rather he was transported via ambulance to Baptist Medical Center located in Jackson, Hinds County, Mississippi, where he sought medical treatment for a head injury he sustained in the accident. Officer Addison, who was in training with the Ridgeland Police Department, followed the ambulance transporting Shaw to Baptist Medical Center, where he maintained watch over Shaw at the hospital, though Shaw was not under arrest.
¶ 4. Culotta and his passengers were taken to the University of Mississippi Medical Center, also located in Jackson, Hinds County, Mississippi, for medical treatment. While both Shaw and Culotta were being treated, Officer Derrington returned to the Ridgeland police station and began preparing an affidavit and the required underlying facts and circumstances necessary to obtain a search warrant for a sample of Shaw's blood. The warrant was ultimately issued at approximately 3:30 a.m. on December 14, 2002, by Ridgeland Municipal Judge Hal McCarley. As a result, *856 Officer Neal took the warrant to Baptist Medical Center, where the warrant was presented and a blood sample was taken from Shaw. After the blood sample was taken, Shaw was placed under arrest and later indicted for violating Mississippi Code Annotated § 63-11-30 (Rev.2004), operation of a motor vehicle under the influence of intoxicating liquor which results in the death of another.
¶ 5. On May 12, 2004, a suppression hearing was conducted at which Shaw's counsel asked the trial judge to rule on several issues. The issues on which Shaw sought a ruling included the defense's motions to suppress the results of Shaw's blood alcohol content (BAC) test, to suppress Shaw's statements made at the scene of the accident, to suppress the use of medical records obtained from Baptist Medical Center, a defense motion for additional discovery dealing with the handling of blood evidence by the Mississippi Crime Laboratory, and the State's motion to suppress the results of Culotta's BAC test. The trial court ruled that Shaw was entitled to further discovery pertaining to the state crime lab's handling of blood evidence. The trial court further ruled that the motion to suppress the medical records obtained from Baptist Medical Center and the State's motion in limine concerning the results of Culotta's BAC test would be taken up at a later time. The trial court then requested briefs from both parties concerning the remaining two issues, the suppression of the results of Shaw's BAC test and the suppression of statements made by Shaw at the scene of the accident, so that a ruling could be made soon thereafter.
¶ 6. On June 29, 2004, the trial court issued its ruling concerning the admissibility of Shaw's BAC test results and Shaw's statements made at the scene of the accident. The trial court ruled that each would be admissible. First, the trial judge addressed the admissibility of the statements Shaw made at the scene of the accident. The trial court found that the line of questioning by police was proper, as Shaw was not in custody during questioning; therefore, no custodial interrogation occurred and the statements were properly admissible.
¶ 7. Next, the trial court addressed the admissibility of Shaw's BAC test results, ruling the results were properly admissible. The court reasoned that the circumstances were obviously not subject to the hot pursuit exception to the requirement of a valid warrant, but that the facts presented were somewhat similar to that exception, as Shaw was transported out of the jurisdiction to receive medical treatment with an officer following behind. The trial court reasoned that the officer's jurisdiction over the matter would follow into Hinds County, as Shaw was being transported to Hinds County in order to obtain medical treatment. The trial court further found that probable cause existed at the accident scene, so that an arrest could have been made at that time for D.U.I. and a blood sample could have been acquired as a search incident to arrest, but instead the police made the decision to pursue the blood sample via a warrant. Due to this probable cause, the court found that Shaw could have been arrested for D.U.I. both in Ridgeland and in Hinds County, "given the reasons and circumstances the defendant left the jurisdiction of Ridgeland, and exigent circumstances existed to allow a warrantless search to obtain blood." The trial court further opined that the officers acted in good faith in relying upon the validity of the warrant when serving the warrant without the aid of Hinds County law enforcement authorities. The trial court's ruling is best summed up in its own words:

*857 There was no wrongful activity on the part of the police here. They sought help from the district attorney's office, obtained a valid search warrant and served it on the defendant in good faith, all when they could have arrested the defendant on the scene and drawn the blood incident to such arrest.
¶ 8. Aggrieved by the trial court's ruling, Dr. Shaw appeals raising the following two issues:
I. WHETHER THE TRIAL COURT ERRED IN FINDING THE RESULTS OF SHAW'S BAC TEST ARE ADMISSIBLE.
II. WHETHER THE TRIAL COURT ERRED IN FINDING SHAW'S STATEMENTS MADE TO POLICE AT THE SCENE OF THE ACCIDENT ARE ADMISSIBLE.

LEGAL ANALYSIS
I. WHETHER THE TRIAL COURT ERRED IN FINDING THE RESULTS OF SHAW'S BAC TEST ARE ADMISSIBLE.

STANDARD OF REVIEW
¶ 9. The standard of review regarding a trial judge's ruling at a suppression hearing is whether substantial credible evidence was present to support the trial judge's finding when evaluating the totality of the circumstances. Price v. State, 752 So.2d 1070, 1073(¶ 9) (Miss.Ct. App.1999). Our standard of review regarding the admission of evidence in a criminal case is abuse of discretion. Harris v. State, 731 So.2d 1125, 1130 (¶ 29) (Miss. 1999). "The discretion of the trial court must be exercised within the boundaries of the Mississippi Rules of Evidence." Johnston v. State, 567 So.2d 237, 238 (Miss.1990).

DISCUSSION
¶ 10. The lower court in the case at bar allowed the admission of Shaw's BAC test on the basis of a valid search warrant issued by Municipal Judge Hal McCarley, and on the Ridgeland Police officers' probable cause developed at the scene of the accident. In reviewing the circuit court's ruling, we find that the search warrant was invalid. When officers seek and obtain a search warrant, they are justified in relying on that warrant's validity except in four situations: (1) if the judge was mislead by false statements in the affidavit which was made in support of the warrant; (2) the issuing judge abandoned his judicial role; (3) if the affidavit is so lacking probable cause that the belief of probable cause is unreasonable; and (4) the warrant is facially deficient, to the extent that an executing officer cannot reasonably presume validity. White, 842 So.2d at 571(¶ 15). Officer Derrington did not act in good faith in obtaining this search warrant, and mislead the judge with false statements in order to secure this warrant. Derrington signed a sworn affidavit on December 14, 2002, in order for the judge to issue a search warrant. In this affidavit, Derrington swore to two different statements that were untrue and he later testified under oath at a suppression hearing to the opposite of what he swore to in this affidavit. The first false statement was that the suspect has refused to submit to an analysis of his breath after having been offered an opportunity to submit. This statement was sworn to by Derrington in the affidavit and later appeared in the search warrant. Derrington testified under oath that at no time to his knowledge was Shaw offered a breath analysis.
¶ 11. Derrington, also under oath and in his affidavit, stated that the suspect had been placed under arrest for D.U.I. This false statement also appears in the search *858 warrant. Derrington again testified under oath at the suppression hearing that Shaw was not placed under arrest until after the search warrant was issued. An improper affidavit rendered the warrant void and would result in the exclusion of all evidence obtained thereby. Boyd v. State, 206 Miss. 573, 574, 40 So.2d 303, 304 (Miss. 1949). Also because Derrington's statements were knowingly inaccurate, this situation does not fall under the "good faith" exception to the Fourth Amendment's warrant requirement. See White v. State, 842 So.2d 565, 571(¶ 15)(Miss.2003) (adopting good faith exception to Fourth Amendment warrant requirement); U.S. v. Leon, 468 U.S. 897, 922-23, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (enunciating good faith exception to Fourth Amendment warrant requirement).
¶ 12. The State asserts that even if the warrant was defective, Derrington still had probable cause for the breath analysis, because he placed Shaw under arrest prior to the test. Both Officers Derrington and Phillips stated under oath that Shaw was not arrested until after the blood was taken and they weighed the evidence. "Searches conducted outside the judicial process without prior approval by a judge or magistrate are per se unreasonable under the Fourth Amendment subject to only a few specifically established and well-delineated exceptions." Katz v. U.S., 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Shaw did not consent to the breath analysis, the police officers were not in hot pursuit of Shaw since he was simply being transported by ambulance to Baptist Hospital, and as Derrington testified under oath Shaw was not under arrest. See Id. at 358, 88 S.Ct. 507.
¶ 13. Our supreme court has held that probable cause developed by an officer subsequent to an unlawful search and seizure of the defendant's blood could not retroactively cure such prior violation. McDuff v. State, 763 So.2d 850, 856(¶ 18) (Miss.2000). "The Fourth Amendment prohibition against unreasonable search and seizure applies when an intrusion into the bodysuch as a blood testis undertaken without a warrant, absent an emergency situation." Cole v. State, 493 So.2d 1333, 1336 (Miss.1986) (quoting Schmerber v. California, 384 U.S. 757, 777-71, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)). There was no present emergency situation in this instance which would justify this blood test. We disagree with the trial court's ruling that Shaw being transported to the hospital resulted in hot pursuit. Shaw was not fleeing, and Derrington had time to secure a warrant even though it was invalid. Officers cannot deliberately create the exigent circumstances in an attempt to circumvent the requirements of the Fourth Amendment. U.S. v. Webster, 750 F.2d 307, 327 (5th Cir.1984); U.S. v. Thompson, 700 F.2d 944, 950 (5th Cir.1983); U.S. v. Scheffer, 463 F.2d 567, 574-75 (5th Cir. 1972).
¶ 14. The United States Supreme Court has stated, "omission of such authorization bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure of an after-the-event justification for the search . . . and bypassing this neutral predetermination of the scope of the search leaves individuals secure from Fourth Amendment violations only in the discretion of the police. Katz, 389 U.S. at 359, 88 S.Ct. 507; Beck v. State of Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Since we hold the search warrant invalid and no exigent circumstances were present, there is no need for us to discuss the validity of the jurisdiction issue as it pertains to the service of the warrant on Shaw. Therefore, based on *859 the foregoing reasons, we reverse the trial court's ruling on this issue.
II. WHETHER THE TRIAL COURT ERRED IN FINDING SHAW'S STATEMENTS MADE TO POLICE AT THE SCENE OF THE ACCIDENT ARE ADMISSIBLE.

STANDARD OF REVIEW
¶ 15. When reviewing a trial court's ruling on a motion to suppress, we must assess whether substantial credible evidence supports the trial court's finding considering the totality of the circumstances. Price v. State, 752 So.2d 1070, 1073(¶ 9) (Miss.Ct.App.1999) (citing Magee v. State, 542 So.2d 228, 231 (Miss.1989)). Also, the admissibility of evidence lies within the trial court's discretion and will only be reversed if this discretion is abused. Williams v. State, 823 So.2d 1210, 1211(¶ 4) (Miss.Ct.App.2002). "The discretion of the trial court must be exercised within the boundaries of the Mississippi Rules of Evidence." Johnston v. State, 567 So.2d 237, 238 (Miss.1990).

DISCUSSION
¶ 16. Shaw suggests that his verbal responses at the scene of the accident should be suppressed as not reliable because he was disoriented, confused, and suffering from undisputed trauma of shock and retrograde amnesia. Shaw argues that his verbal responses would produce the danger of unfair prejudice, confusion of the issues, and the potential for misleading the jury and should be excluded under Mississippi Rule of Evidence 403. In considering whether such evidence is prejudicial to the accused, the trial court must weigh the probative value of the evidence against the prejudicial impact to Shaw and determine whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice. Brown v. State, 749 So.2d 204, 210(¶ 10) (Miss.Ct. App.1999). The trial court is given "broad discretion" when weighing these factors. Id.
¶ 17. The State asserts that this case is almost identical to Hopkins v. State, 799 So.2d 874 (Miss.2001). However, we disagree. The defendant in Hopkins asserted that he was in custody when he made the statements that the State wanted admitted into evidence, and he was not given the Miranda warning. Id. at 877-79(¶ 6); Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The supreme court ruled this was a non-custodial setting; therefore, Miranda warnings were not required. Id. at 878(¶ 8). Here Shaw does not claim he was in custody; he simply argues that his statements have more prejudicial value than probative value and require exclusion according to Mississippi Rules of Evidence 403. Although Shaw does not explain how such statements are more prejudicial than probative, Shaw's statements clearly have probative value. We find that the trial court did not, therefore, abuse its discretion in allowing the statements to be admitted into evidence. We, therefore, affirm the trial court's denial of the motion to suppress Shaw's statements made to the police at the scene of the accident.

CONCLUSION
¶ 18. We reverse the trial court's ruling denying the motion to suppress Shaw's blood test results, and we affirm the trial court's ruling admitting Shaw's statements made at the accident scene.
¶ 19. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT IS REVERSED IN PART AND AFFIRMED IN PART. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
*860 KING, C.J., LEE, P.J., CHANDLER AND ISHEE, JJ., CONCUR. IRVING, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES, GRIFFIS AND BARNES, JJ.
IRVING, J., CONCURRING IN PART, DISSENTING IN PART:
¶ 20. I agree with part II of the majority opinion. However, I cannot agree that the results of Dr. Shaw's blood test should be suppressed because the affidavit in support of the search warrant, which led to the blood analysis, allegedly contained false statements of sufficient magnitude to invalidate the search warrant.[1] Therefore, I respectfully dissent from part I of the majority opinion. I would affirm the ruling of the trial court in toto.
¶ 21. The majority finds that the search warrant issued for an analysis of the alcohol contents of Dr. Shaw's blood was invalid because Officer Derrington[2] made two false statements in the affidavit that he submitted in support of the search warrant. The false statements were: "the suspect (Dr. Shaw) has refused to submit to any analysis of his breath after having been offered an opportunity to submit," and "the suspect had been placed under arrest for DUI." Majority Opinion at (¶¶ 10-11). As to the first allegedly false statement, it is true that Dr. Shaw had not refused to submit to an Intoxilyzer test prior to the application for the search warrant, but he had refused to submit to a blood test as shown by the following colloquy between Officer Ron Phillips and the prosecutor during the suppression hearing:
Q. And what kind of conversation did you have with Mr. Shaw at that point?
A. As I said, just basic accident investigation questions, trying determine what happened.
Q. And if I recall, what kind of questions and what kind of answers did you get?
A. Basically he did not know what happened due to him blacking out. That was really the only answer I got from him.
Q. Did you request anything of him?

A. Yes, sir, I did.

Q. What was that?

A. I requested a blood sample.

Q. What was his response?

A. He refused.

Q. What did you do at that point I time?
A. At that time, I notified Sergeant John Neal and Sergeant Howard Young, being supervisors and the accident investigator for the situation.
Q. What law enforcement agency are they employed by?
A. By the city of Ridgeland Police Department.
Q. Where did you notify them from? Where physically were you?
A. I was at the Baptist Hospital.
Q. Any particular portion of Baptist Hospital?
A. The emergency room.
Q. Was Mr. Shaw in your sight as you communicated with the other officers?

*861 A. He was not in my sight. He was in Officer Eddie Addison's sight.
Q. Generally you said the emergency room. If you know, where was Mr. Shaw?
A. He was in one of the emergency rooms, trauma unit rooms.
Q. Treatment room?
A. Yes, sir.
Q. Do you know about what time it was when you contacted John Neal and Howard Young?
A. No, sir, I don't.
Q. Do you recall how long you had between at UMC?
A. Approximately and hour, 45 minutes to an hour.
Q. Again, why did you contact them?
A. Why did I contact them?
Q. You contacted them, correct?
A. I'm sorry.
Q. What did you ask, if anything?
A. I let them know the situation, and it was determined at that time that we would get a search warrant to draw the blood.

¶ 22. On the point of Dr. Shaw's refusal to submit to a blood analysis, Officer John Neal gave the following testimony:
Q. Were you involved in any other activity regarding Mr. Shaw?
A. At that point, we felt the need that we would probably need [sic] to draw Mr. Shaw's blood. And I believe Officer Phillips had gone to Baptist Hospital at that point and had contacted Sergeant Young about Mr. Shaw's refusal to provide a blood sample, we began working on a search warrant.
¶ 23. While it appears accurate that the formal arrest of Dr. Shaw did not take place until after the search warrant was issued and the blood drawn, it is also accurate that the Ridgeland Police Department had an officer follow the ambulance transporting Dr. Shaw to Baptist Memorial and stand guard in the doorway of the emergency room where Dr. Shaw was placed.
¶ 24. Notwithstanding the technical misstatement in the affidavit regarding when Dr. Shaw was arrested, the critical inquiry is whether the Ridgeland police officers had probable cause to believe that Dr. Shaw was driving under the influence at the time of the accident. If so, he could be compelled to submit to a blood test for analysis for alcohol content. See MISS. CODE ANN. § 63-11-8 (Rev.2004) as construed by McDuff v. State, 763 So.2d 850, 856(¶ 19) (Miss.2000). There is no doubt that the officers had probable cause to believe that Dr. Shaw had operated his vehicle while under the influence of an intoxicating substance. To prove, I turn to a consideration of the affidavit and statement of underlying facts and circumstances which were presented to the judge who issued the search warrant.
¶ 25. Officer Derrington used a preprinted form affidavit. The two statements, which are alleged to have been false, were already preprinted. For whatever reason, Officer Derrington failed to strike through those two preprinted statements. I quote the affidavit, together with the statement of underlying facts and circumstances, in the form as submitted to the judge:
AFFIDAVIT FOR SEARCH WARRANT
THE STATE OF MISSISSIPPI
COUNTY OF MADISON
This day personally appeared before me, the undersigned Judicial Officer of said County the following persons:
DEE DERRINGTON, OF THE RIDGELAND POLICE DEPARTMENT known to me as a credible person, *862 who, after having been first duly sworn, depose and say:
1. That upon personal observation and or information and belief, affiant has good reason to believe that a violation of the Mississippi Implied Consent law, Sec. 63-11-30 (1972) has presently been committed by a certain person in this jurisdiction known as SAMUEL N. SHAW (suspect hereinafter)
2. That the basis for such belief is contained in the underlying facts and circumstances page attached hereto and incorporated herein as exhibit "a".
3. That the above stated crime(s) remain under investigation.
4. That the above mentioned suspect has refused to submit to an analysis of his breath after having been offered an opportunity to submit to the same.
5. The suspect has been placed under arrest for D.U.I.
6. That in order to conduct a more complete investigation into the facts of the above stated crime(s), a search is necessary of the blood of the suspect for testing and analysis of his blood for blood alcohol and other substance content.
7. The person to be searched is SAMUEL N. SHAW, W/M, DOB: 06-01-46
8. That the things officers seek to search for are: alcohol, cocaine, methamphetamine, other controlled or non-controlled substances which may impair the suspects driving ability.
WHEREFORE, affiant request that a search warrant issue authorizing a search of the above described room, at any time this date.
Dee Derrington
AFFIANT
SWORN TO AND SUBSCRIBED BEFORE ME, THE 14 day of December, 2002, 1995.

____________________________ MAGISTRATES SIGNATURE

Ridgeland Municipal Judge

exhibit "a"

UNDERLYING FACTS AND CIRCUMSTANCES
On or about 14 day of December, 1995 2002, the suspect, Samuel Shaw was apprehended for the offense driving while under the influence of intoxicating liquor. The offense occurred @ or about 01:15 o'clock A.M. The defendant has been place under arrest. It is now approximately 3:30 o'clock a.m. Evidence of intoxication and or impairment from other substance is dissipating quickly. The suspect has refused chemical analysis of his breath.
The basis for my belief that the suspect was operating a motor vehicle in violation of M.C.A. 63-11-30 is as follows:
(Officer must below, type or write in narration of facts of this case.)
The driver, Samuel Shaw, had an smell of an intoxicating beverage omitting from his person. Shaw stated that he had drank five beers at Shuckers since 11:00 p.m. Shaw was off balance and confused about the accident. Shaw stated that he passed out before the accident.
Additionally, the following were observed: (check all that apply)
Suspect had:
X bloodshot eyes X slurred speech X smelled of alcohol
Suspect:
___ failed all field sobriety tests given
___ failed some of the field sobriety tests given

*863 X admitted to having recently consumed alcoholic beverage
Officer observed:
___ alcoholic beverage containers in or near suspects vehicle
X suspect failed to maintain proper control of vehicle
Dee Derrington
Officer's Signature
¶ 26. On these facts, the officers clearly had probable cause to believe that Dr. Shaw had operated his vehicle while under the influence of an intoxicating substance. Therefore, I see no basis for suppressing the results of Dr. Shaw's blood test, even if the affidavit in support of the search warrant contained two statements that were inaccurate. It cannot be said that either of the statements was the primary basis for the issuance of the warrant. Additionally, Mississippi law provides that an officer must secure a blood test of any individual involved in a motor vehicular accident death, provided the officer has probable cause to believe the driver of the vehicle was operating his vehicle while intoxicated. See MISS.CODE ANN. § 63-11-8 (Rev.2004) as construed by McDuff, 763 So.2d at 856(¶ 19). Therefore, for the reasons presented, I respectfully dissent.
BRIDGES, GRIFFIS AND BARNES, JJ., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] Dr. Shaw is a medical doctor. At the time of the test, more than three hours after the accident, Dr. Shaw's blood alcohol concentration was .09%.
[2] At the time of the suppression hearing, Officer Derrington was employed with the Vicksburg Police Department.