972 So.2d 56 (2008)
Ronald VAUGHN, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-00065-COA.
Court of Appeals of Mississippi.
January 8, 2008.
*57 Michael E. Robinson, attorney for appellant.
Office of the Attorney General by Ladonna C. Holland, attorney for appellee.
Before MYERS, P.J., GRIFFIS and CARLTON, JJ.
MYERS, P.J., for the Court.
¶ 1. Ronald Vaughn was convicted of aggravated driving under the influence following an accident in which his car struck a police officer on foot. Vaughn sought to suppress the results of a blood sample taken after the accident. However, the trial court denied his motion. Vaughn seeks review of the trial court's denial of his motion to suppress the blood samples and their results. Vaughn also challenges *58 the trial court's denial of his motion for a directed verdict or new trial because the blood samples were improperly introduced at trial. Finding no error, we affirm.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. On February 9, 2004, Michael Hollingsworth, a deputy for the Warren County Sheriff's Department, was working a funeral detail. Deputy Hollingsworth parked his car, with lights flashing, on Highway 80 in order to direct traffic so that the funeral procession could continue to the nearby cemetery. A car driven by Ronald Vaughn approached and attempted to pass the funeral procession, driving east in the westbound lane. As Vaughn was passing the procession, his car struck Deputy Hollingsworth, who was attempting to flag him down. Deputy Hollingsworth flew into oncoming traffic, was thrown onto a truck, and then landed in a nearby ditch.
¶ 3. After the accident, Vaughn left his vehicle. When approached by others at the scene of the accident, Vaughn became confrontational, cursing and threatening to leave. Vaughn then fell to the ground after being told by those on the scene he would not be leaving until police arrived. Highway Patrol Officer Scott Henley arrived soon thereafter at the scene of the accident. He approached Vaughn, who was unresponsive. The officer testified he observed that Vaughn smelled of alcohol and marijuana and his eyes were dilated. Officer Henley further testified to having observed a bottle of gin and a bag of marijuana in Vaughn's car. Vaughn was arrested and charged with aggravated driving under the influence (DUI).
¶ 4. Vaughn was then transported by Trooper Daniel Lewis of the Mississippi Highway Patrol to River Road Hospital in Vicksburg. After arriving at the hospital, Officer Henley requested that a blood sample be taken from Vaughn. Henley observed a nurse take the sample from Vaughn and he handed the container to Trooper Lewis, who sealed the sample. Henley then transported the sample to the Mississippi Crime Laboratory, where the sample later tested positive for marijuana, ecstasy, and methamphetamine. Remarkably, Hollingsworth recovered from the accident, but did suffer a very serious injury, which required extensive therapy. Vaughn was subsequently convicted of aggravated DUI.
¶ 5. Vaughn asserts the samples should have been excluded for two reasons. First, Vaughn argues that the blood samples were taken in violation of his Fourth Amendment rights. Second, Vaughn contends that the State failed to establish a proper chain of custody of the blood samples; thus, the trial court should have excluded the blood samples from evidence.
¶ 6. Vaughn contends that the blood test violated his Fourth Amendment rights because he did not consent and there was no valid search warrant. Vaughn points out that there was no emergency or exigent circumstance which prevented the police from obtaining a valid search warrant to take the blood sample. Vaughn also argues that he was either not actually under arrest at the time the sample was taken or that the arrest itself was unlawful. Vaughn asserts the State failed to initially establish a chain of custody and failed to establish that the blood samples actually belonged to Vaughn.
¶ 7. Finally, Vaughn contends that he established a clear break in the chain of custody regarding the blood sample, and that the blood evidence should have been excluded at trial. Vaughn seeks to have the trial court's decision reversed or, in the alternative, to grant him a new trial.
*59 ¶ 8. First, the State argues that Vaughn is barred from appealing the denial of his motion to suppress because he failed to allege this assignment of error in his motion for JNOV or new trial. Alonso v. State, 838 So.2d 309, 313(¶ 10) (Miss.Ct. App.2002) (citing Seals v. State, 767 So.2d 261(¶ 6) (Miss.Ct.App.2000)). Notwithstanding the bar, however, the State contends that Officer Henley acted properly in ordering the blood test without a search warrant or consent. The State argues that Mississippi Code Annotated section 63-11-5(1) (Rev.2004) provides that consent is implied if a person operates a vehicle on the public roads of Mississippi and, as such, Officer Henley had authority to order the blood test. Additionally, the State argues Officer Henley properly complied with the law since he had both reasonable grounds and probable cause to believe Vaughn was under the influence of drugs or alcohol at the time of the accident. Further, the State denies Vaughn's contention that he was not under arrest. The State contends that the arresting officers were conducting a search incident to lawful arrest when taking the sample, and further that exigent circumstances were present, necessitating taking the sample without a warrant. The State argues that nearly two hours had lapsed before Vaughn was transported to the hospital from the scene of the accident, thus creating exigent circumstances.
¶ 9. With regard to Vaughn's second argument, the State contends that Vaughn failed to present evidence showing that the chain of custody of the evidence had been broken. The State further asserts that it is not required to call every single person as a witness who handled the evidence to establish a proper chain of custody. Additionally, the State points out that Vaughn has failed to present evidence that the blood sample was altered or tampered with during the testing process.

STANDARD OF REVIEW
¶ 10. "When reviewing a trial court's ruling on a motion to suppress, we must assess whether substantial credible evidence supports the trial court's finding considering the totality of the circumstances." Shaw v. State, 938 So.2d 853, 859(¶ 15) (Miss.Ct.App.2005) (citing Price v. State, 752 So.2d 1070, 1073(¶ 9) (Miss.Ct. App.1999)). "The standard of review for the admission or suppression of evidence in Mississippi is abuse of discretion." Troupe v. McAuley, 955 So.2d 848, 855(¶ 19) (Miss.2007) (citing Poole v. Avara, 908 So.2d 716, 721(¶ 8) (Miss.2005)).
¶ 11. This Court reviews a trial court's denial of a JNOV or a motion for new trial under an abuse of discretion standard. Dilworth v. State, 909 So.2d 731, 736(¶ 17) (Miss.2005) (citing Howell v. State, 860 So.2d 704, 764 (¶ 212) (Miss. 2003)). When looking at the denial of a JNOV, the court looks to the sufficiency of the evidence at trial. Dilworth, 909 So.2d at 736(¶ 17). "[T]he critical inquiry is whether the evidence shows `beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.'" White v. State, 958 So.2d 241, 245(¶ 12) (Miss.Ct.App.2007) (citing Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005)). Further, the evidence should be viewed in the light most favorable to the non-moving party. Bush, 895 So.2d at 843(¶ 17).
¶ 12. With regard to the motion for a new trial, the court will look to the weight of the evidence presented at trial. White, 958 So.2d at 246(¶ 13). This Court will only overrule the trial judge's denial of a motion for new trial "when [the verdict] *60 is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Id.

DISCUSSION
I. WHETHER THE TRIAL COURT'S DENIAL OF THE MOTION TO SUPPRESS THE BLOOD TEST AND RESULTS VIOLATED VAUGHN'S FOURTH AMENDMENT RIGHT AGAINST UNREASONABLE SEARCH AND SEIZURE
¶ 13. The trial court admitted Vaughn's blood sample and the results of the toxicology reports into evidence, finding that there was sufficient probable cause at the time of the arrest to order the taking of a blood sample. "[B]lood searches based upon probable cause are legal." Wilkerson v. State, 731 So.2d 1173, 1177(¶ 13) (Miss.1999). Our standard of review for a trial court's finding of probable cause is abuse of discretion. Holloman v. State, 820 So.2d 52, 55(¶ 11) (Miss. Ct.App.2002).
¶ 14. The lower court noted many factors which amounted to sufficient probable cause. Officer Henley testified that Vaughn was non-responsive, incoherent, and his eyes were dilated when the officer arrived at the scene of the accident. Officer Henley further testified he detected the smell of marijuana and possibly alcohol on Vaughn and in his car. Further, Henley testified he observed a bottle of alcohol in Vaughn's car. In addition, witnesses to the accident relayed information regarding how the accident occurred and about Vaughn's behavior immediately after the accident.
¶ 15. Vaughn relies on this Court's ruling in Shaw v. State, 938 So.2d 853 (Miss. Ct.App.2005) in challenging the admission of the blood test and results at trial. Vaughn argues that there was a violation of his Fourth Amendment rights of unreasonable search and seizure because he claims there were no exigent circumstances. However, the case sub judice is distinguishable from Shaw in several ways. First, the blood drawn from the suspect in Shaw was done pursuant to an invalid search warrant which contained false statements made by the acquiring officer. Id. at 857-58 (¶ 11). The officer in Shaw claimed falsely in the affidavit that the suspect refused to submit to a breath analysis test and that the suspect was under arrest prior to the warrant being issued. Id. Additionally, the officer in Shaw testified at trial that the suspect was actually not under arrest before the blood test was performed. Id. at 858(¶ 12). According to the record in the case sub judice, Vaughn was arrested and handcuffed at the scene of the accident before the blood test was ordered or administered. Per contra, the police in Shaw did not develop probable cause until after the blood test was ordered. Id. In Shaw, this Court noted that "[o]ur supreme court has held that probable cause developed by an officer subsequent to an unlawful search and seizure of the defendant's blood could not retroactively cure such prior violation." Id. at 858(¶ 13) (citing McDuff v. State, 763 So.2d 850, 856(¶ 18) (Miss.2000)).
¶ 16. The trial court's ruling that there existed sufficient probable cause to admit Vaughn's blood test is supported by the record. In McDuff v. State, 763 So.2d 850, 856(¶ 19) (Miss.2000), the court held that "the drawing of the two (2) tubes of . . . blood, done specifically at the request of law enforcement, was improper because this was done without probable cause, a warrant or consent, and was not incident to a lawful arrest." The police officers in McDuff did not see or speak to the suspect at the time of the accident, or before the blood test was ordered. Id. at 852 (¶ 4-5). *61 The court found probable cause did not exist prior to the blood test and the suspect was not placed under arrest at the time of the test. Id. at 856(¶ 19). Therefore, the court found probable cause was developed after the test was administered, and the subsequent probable cause finding was too late to correct the unlawful search and seizure of the suspect's blood. Id. at 856(¶ 18).
¶ 17. Additionally, we agree with the State's contention that the blood test was admissible under the search incident to the lawful arrest exception to the warrant requirement. Id. at 856(¶ 19). Here, the record clearly reflects that police had developed sufficient information to believe Vaughn had committed a crime at the time of the accident, and his arrest was proper. Testimony at trial revealed that Vaughn was handcuffed and under arrest shortly after the officers arrived at the accident scene. Vaughn was properly under arrest, since he was not free to leave the accident, and police had probable cause to believe he was under the influence of drugs or alcohol due to his behavior at the scene.
¶ 18. In addition to having probable cause, the officers were working under exigent circumstances. "A warrantless search is permissible in certain exigent circumstances if it can be shown that grounds existed to conduct the search that, had time permitted, would have reasonably satisfied a disinterested magistrate that a warrant should properly issue." Holloman v. State, 820 So.2d 52, 55(¶ 10) (Miss. Ct.App.2002) (citing Sanders v. State, 678 So.2d 663, 667 (Miss.1996)). Vaughn's blood needed to be tested quickly in order to preserve the evidence of drugs or alcohol in his system. Id. Therefore, exigent circumstances existed to permit a search.
¶ 19. We find there was sufficient evidence to lead Officer Henley to suspect that Vaughn was under the influence of drugs or alcohol at the time of the accident and arrest. This Court cannot find that the trial court abused its discretion in admitting the blood test and results into evidence. Nor can this Court find that the trial court violated Vaughn's Fourth Amendment rights by admitting the blood test into evidence. The trial court's refusal to grant a directed verdict or a motion for a new trial was not error.
II. WHETHER THE TRIAL COURT ERRED IN FINDING NO BREAK IN THE CHAIN OF CUSTODY OCCURRED AND FINDING THAT THERE WAS NO TAMPERING OR SUBSTITUTION OF THE BLOOD TEST EVIDENCE
¶ 20. Vaughn argues that the State erred in failing to introduce testimony from everyone involved in testing the blood evidence at the Alameda, California testing site. However, "[e]stablishing a proper chain of custody . . . has `never required the proponent to produce every person who handled the object, nor to account for every moment of every day.'" Pittman v. State, 904 So.2d 1185, 1191(¶ 11) (Miss.Ct.App.2004) (quoting Butler v. State, 592 So.2d 983, 985 (Miss. 1991)). Vaughn's assertions that a break in the chain of custody occurred or that there was evidence of tampering are without merit. A trial court is given great discretion when determining whether the State has established a proper evidentiary chain of custody. Pittman 904 So.2d at 1191(¶ 11) (citing Morris v. State, 436 So.2d 1381, 1388 (Miss.1983)). Vaughn has the burden of proof to establish a break by showing that "there is an indication or reasonable inference of probable tampering with the evidence or substitution of the evidence." Ellis v. State, 934 So.2d 1000, 1005(¶ 20) (Miss.2006).
*62 ¶ 21. The State produced testimony from Officer Henley, who witnessed the blood being taken from Vaughn. Officer Henley additionally testified he handed the vials of blood to Officer Lewis, who placed them in a sealed evidence bag. Officer Henley then testified he took the evidence to the Mississippi Crime Lab, where it was given to John Stevenson, a Crime Lab employee, who entered information regarding the sample in the computer system. Stevenson performed testing on the blood and sent the blood to National Medical Laboratory for further testing. The State produced evidence from National Medical Laboratory, accounting for all persons who handled or tested the blood at their California facility. From the testimony reviewed in the record, there is sufficient testimony from individuals who handled the sample to establish a chain of custody. Further, Vaughn points to no evidence which would show probable tampering or substitution of evidence. Vaughn has offered no proof that anything irregular occurred with the blood sample. We cannot find that the trial court committed error in failing to grant Vaughn a directed verdict or a new trial based on the admission of the blood test into evidence. This Court finds no error in the admission of the evidence against Vaughn.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY OF CONVICTION OF AGGRAVATED DRIVING UNDER THE INFLUENCE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIFTEEN YEARS TO SERVE, AND FIVE YEARS OF POST-RELEASE SUPERVISION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.
KING, C.J., LEE, P.J., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., CONCURS IN PART AND IN RESULT.