ISHEE, J.,
for the Court:
¶ 1. In 2011, Henry Lee Craig was convicted of murdering Silas Miller. Craig was sentenced by the Jackson County Circuit Court to life in the custody of the Mississippi Department of Corrections (MDOC). Craig filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. The circuit court denied Craig’s motion. Aggrieved, Craig now appeals. Finding no error, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. In May 2009, Miller became involved in an altercation with Floyd Broadnax at a house on Barnett Street in Moss Point, Mississippi. Miller shot Broadnax after the two men had exchanged heated words; however, Broadnax was not seriously injured. After Miller shot Broadnax, Miller quickly rode his bicycle to his own home on Barnett Street. Upon arrival at his house, Miller was shot in the stomach by a man wearing dark pants and a white shirt.
¶ 3. Authorities arrived at Miller’s house soon after the shooting and found Miller seriously injured but conscious. Before being taken to a nearby hospital by ambulance, Miller told police officers that Broadnax had shot him. Miller died at the hospital shortly thereafter.
¶ 4. Broadnax was questioned by authorities but refused to give any official statements to the police. Instead, Broadnax merely acknowledged that he had witnessed the crime and that the shooter was a man wearing black pants and a white shirt. However, Broadnax later testified that after Miller shot him, he observed Miller ride his bicycle back to his house, open the door, and get shot in the back by Craig, who was waiting inside Miller’s house. Broadnax stated that Miller was not looking inside the house as he opened the door and, therefore, could not see who had shot him.
¶ 5. Police officers also questioned several residents on Miller’s street. Katrina Viverette and her husband, Kenneth Viv-erette, stated that they were inside their house when they heard several gunshots. When the shooting stopped, the couple looked through the window and saw a man wearing black pants, a white shirt, a bandana, and a cap walking west down the street carrying a gun. Soon thereafter, Katrina went to her front door and saw Broadnax walking onto her porch from the east. Broadnax suggested that Katrina call 911 and stated that Miller had been shot. Broadnax did not tell Katrina or her husband that Craig was the shooter. At trial, Katrina and Kenneth both testified that they saw the shooter walking west on Barnett Street and that Broadnax was not the shooter. However, neither could identify Craig as the shooter.
¶ 6. Another resident, Perry Kelly, was gathered in his front yard with Billy Ray Hamilton and Reuben Fountain when the *809 shots rang out. None of the men witnessed the shooting. Kelly claimed to have seen a man walking down the street wearing blue jeans and a white shirt but did not see the man with a weapon. Hamilton testified that he witnessed a man walking down the street wearing black pants and a white shirt with a gun in his hand. Finally, Fountain testified that he saw Craig standing in front of Miller’s house a few minutes after the shooting with a gun in his hand, and then he saw Craig walk west on Barnett Street. However, Fountain did not provide the police with an eyewitness statement until over a year after Miller was killed.
¶ 7. Broadnax’s cousin, Jermaine Huck-leby, was another Barnett Street resident. He testified to having seen Craig shoot Miller as Miller started to enter his own house. Nonetheless, Huekleby later admitted that he based his identification of the shooter partly on what others had told him and that he only saw approximately thirty percent of the shooter’s face.
¶ 8. Keisha Fielder was also at Huckle-by’s home on the day of the incident, and she saw the initial altercation between Broadnax and Miller. She witnessed the two men running in opposite directions down Barnett Street after Miller shot Broadnax, and claimed to have seen Craig shoot Miller shortly thereafter. However, Fielder failed to tell authorities that she had witnessed the shooting until well after the incident had taken place.
¶ 9. Additionally, Laterrenee Myers stated that he saw Craig the night of the incident. Myers claimed Craig had a gun and was wearing a hooded pullover and a white shirt. Finally, Jerome Lorraine, an FBI agent, testified that Craig admitted to having been present when Miller was shot and killed but denied being the shooter. Craig told Agent Lorraine that Miller had previously shot into Craig’s home and that Craig further disliked Miller because Miller was a sex offender.
¶ 10. Craig was soon arrested and charged with Miller’s murder. A trial took place in the circuit court. All of the witnesses were presented to the jury. The jurors were also informed of Miller’s deathbed statement that Broadnax had shot him. No physical evidence existed against Craig; however, the jurors were provided with multiple witnesses’ testimony on which to base their decision.
¶ 11. The first trial resulted in a hung jury. A second trial ended in a mistrial due to improper remarks made by Craig’s defense counsel during voir dire. Finally, at Craig’s third trial, the same witness testimony was presented to the jury. Craig’s defense was centered on the notion that if he had shot Miller, it was either in self-defense or in the defense of others. Craig failed to call any witnesses to the stand and, instead, had the circuit court read into the record the parties’ stipulation that the first responding officer witnessed Miller’s deathbed identification of Broad-nax as the person who had shot him. Craig’s defense attorney then rested. The jury returned a unanimous verdict of guilty, and Craig was sentenced to life in the custody of the MDOC.
¶ 12. Craig filed a motion for a JNOV asserting that the evidence was not sufficient to support the jury’s determination. Alternatively, Craig requested a new trial, claiming the weight of the evidence did not support the conviction. The motion was denied, and Craig timely appealed.
DISCUSSION
¶ 13. In reviewing the denial of a motion for a JNOV or a new trial, we analyze the circuit court’s decision under an abuse-of-discretion standard. Vaughn v. State, 972 So.2d 56, 59 (¶ 11) (Miss.Ct. *810 App.2008) (citing Dilworth v. State, 909 So.2d 731, 736 (¶17) (Miss.2005)). The critical inquiry in reviewing the denial of a motion for a JNOV is whether the evidence showed, beyond a reasonable doubt, that the accused committed the crime. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005). Nonetheless, an appellate court should not question “whether it ‘believes that the evidence at the trial established guilt beyond a reasonable doubt.’ Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
¶ 14. Here, Craig was charged with murder. Murder is defined by Mississippi Code Annotated section 97-3-19(l)(a) (Rev.2006) as “[t]he killing of a human being without the authority of law by any means or in any manner ... [w]hen done with deliberate design to effect the death of the person killed, or of any human being....” Accordingly, the question is whether any rational juror could have determined, beyond a reasonable doubt, that Craig shot Miller with the deliberate design to kill him.
¶ 15. While there was no physical evidence tying Craig to the murder, the prosecution provided the jury with multiple eyewitnesses’ testimony regarding the incident. In particular, the jury was presented with one eyewitness, Huckleby, who positively identified Craig as Miller’s shooter. Furthei’more, Myers testified that he saw Craig on the night of the incident with a gun while wearing the same clothing described by the other eyewitnesses. Finally, Agent Lorraine stated Craig admitted he was present at Miller’s house at the time Miller was murdered.
¶ 16. We have long held that on issues of witness credibility, “[t]he jury determines the weight and credibility of witness testimony.” Nelson v. State, 10 So.3d 898, 905 (¶ 29) (Miss.2009). As such, while some witnesses may have been more credible than others, that was for the jury to determine, and we find there was sufficient witness testimony for a rational juror to have found Craig guilty of Miller’s murder.
¶ 17. Craig next asserts that the circuit court erred in denying his motion for a new trial. A motion for a new trial tests the weight of the evidence. See Vaughn v. State, 926 So.2d 269, 271 (¶ 4) (Miss.Ct.App.2006) (citing Hawthorne v. State, 835 So.2d 14, 22 (¶ 32) (Miss.2003)). We have held that matters regarding the weight of the evidence are within the province of the jury. Stegall v. State, 765 So.2d 606, 610 (1110) (Miss.Ct.App.2000). “When reviewing a denial of a motion for a new trial, this Court ‘will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.’” Bush, 895 So.2d at 844 (¶ 18)).
¶ 18. Again, despite the lack of physical evidence against Craig, substantial witness testimony existed and was presented to the jury linking Craig to Miller’s murder. One eyewitness testified to having seen Craig shoot Miller, and another witness stated Craig admitted he was present when Miller was shot but denied that he was the shooter. The jurors considered the evidence presented to them and determined that Craig was guilty of murder. Matters regarding the weight of the evidence are to be settled by the jury, and we will only intervene if the weight of the evidence is overwhelmingly contrary to the verdict. Id. Based on the eyewitnesses’ testimony presented at trial, we cannot say that the evidence was so contrary to the *811 verdict to warrant a new trial. This issue is also without merit.
¶ 19. THE JUDGMENT OF THE' JACKSON COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.