820 So.2d 52 (2002)
Ronald Mark HOLLOMAN, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-00868-COA.
Court of Appeals of Mississippi.
June 18, 2002.
*53 Johnnie E. Walls, Jr., Greenville, attorney for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
EN BANC.
McMILLIN, C.J., for the court.
¶ 1. This is an appeal of a criminal conviction returned by a jury in the Circuit Court of Coahoma County. Ronald Hollomon was convicted of vehicular homicide for allegedly negligently causing an accident resulting in the death of another while he was under the influence of one or more controlled narcotic substances. The indictment charged that, at the time of the accident, Holloman was under the influence of methamphetamine and cocaine.
¶ 2. Though the indictment does not cite a particular statute, it seems evident that Holloman was charged under Section 63-11-30(5) of the Mississippi Code, which states that
Every person who operates any motor vehicle in violation of the provisions of subsection (1) of this section and who in *54 a negligent manner causes the death of another ... shall, upon conviction, be guilty of a felony ....
Miss.Code Ann. § 63-11-30(5) (Supp.2001). Subsection (1), in turn, makes it "unlawful for any person to drive ... a vehicle within this state who ... is under the influence of any drug or controlled substance, the possession of which is unlawful under the Mississippi Controlled Substances Law...." Miss.Code Ann. § 63-11-30(1)(d) (Supp.2001).
¶ 3. Holloman's appeal presents four issues which he contends warrant the reversal of his conviction. For reasons we will proceed to discuss, we find those issues to be without merit and we, therefore, affirm Holloman's conviction and resulting sentence.

I.

Facts
¶ 4. The facts of the case are drawn principally from witnesses for the prosecution. The driver of the other vehicle, Margaret Stone, testified that she suddenly observed Holloman's vehicle approaching her in her lane of travel and that, despite efforts to swerve out of his path, she was unable to avoid a violent collision that injured her, seriously injured Holloman, and caused the death of Stone's young friend, Megann Williams. Through the testimony of an accident reconstructionist, the State presented evidence tending to show that Holloman was traveling at a high rate of speed and that his vehicle, in the moments prior to impact, was weaving on and off the roadway. Additionally, the State presented testimony from a woman acquainted with Holloman who testified to having observed him at a convenience store less than two hours prior to the accident who recalled observing Holloman behaving in a manner she thought unusual and which she described as "hyper." Officers investigating the accident testified that physical evidence at the scene indicated that Holloman's vehicle had rolled over successive times after impact, that the trunk lid had been sprung open, and that there was a collection of debris in the path followed by the vehicle that had the appearance of being scattered from the vehicle as it rolled off the roadway. The officers testified that the debris field contained empty beer cans, packages of syringes, and bottles containing unidentified liquids and residue.
¶ 5. Based on these discoveries, upon Holloman's arrival at the hospital after the accident, a blood sample was drawn and a urine sample taken and tested for the presence of alcohol and narcotic drugs. The tests revealed no alcohol, but the testing did reveal the presence of cocaine and methamphetamines in Holloman's system.
¶ 6. The defense called only two witnesses. One was Holloman's wife, who claimed that she saw Holloman shortly before the accident and that he was behaving in an entirely normal manner. The owner of a building where Holloman was doing some painting work testified to having seen him at approximately 6:30 p.m. and having observed him to be behaving normally at that time. The accident occurred shortly after 10:00 p.m. that evening.
¶ 7. Based on this evidence, the jury returned a verdict of guilty. Holloman's appeal raises the following issues:
(1) Holloman contends that the evidence was insufficient to establish his guilt.
(2) The evidence derived from scientific testing of Holloman's blood and urine samples should have been excluded because the samples were taken without a warrant and without Holloman's consent.
*55 (3) The trial court should have excluded the expert testimony of the State's accident reconstructionist upon Holloman's timely objection.
(4) The trial court improperly excluded the testimony of an expert witness for the defense whose testimony was critical to Holloman's defense.
¶ 8. We will consider the issues in a different order than presented in Holloman's brief, dealing first with the trial court's various rulings on the admissibility of evidence and reserving for last the consideration of whether the evidence was insufficient as a matter of law to uphold the jury's guilty verdict.

II.

Exclusion of Blood and Urine Sample Test Results
¶ 9. Holloman argues that the trial court erred in its ruling regarding his pre-trial motion to exclude any evidence relating to testing of blood and urine samples drawn from his person in the aftermath of the accident. Holloman appears to argue that the officers ordered the collection of the samples based solely on the authority contained in Section 63-11-8 of the Mississippi Code, which requires the collection of fluid samples from drivers in any accident that results in a fatality. This section was declared unconstitutional by the Mississippi Supreme Court in the decision of McDuff v. State, 763 So.2d 850, 857(¶ 19) (Miss.2000), which was decided after the accident but prior to the trial of this cause. In that case, the supreme court found that such an across-the-board requirement would violate the defendant's fourth amendment protections against unreasonable searches and seizures.
¶ 10. Our review of the transcript of this trial leaves us convinced that the admissibility of the test results was determined under principles announced in McDuff since the trial court considered counsel's argument on this point and specifically concluded that there was probable cause to obtain the fluid samples. A warrantless search is permissible in certain exigent circumstances if it can be shown that grounds existed to conduct the search that, had time permitted, would have reasonably satisfied a disinterested magistrate that a warrant should properly issue. Sanders v. State, 678 So.2d 663, 667 (Miss. 1996). The trial court in this case heard evidence from investigating officers that, in their experience, a vehicle traveling as Holloman's did after impact normally leaves an observable field of debris in its path. The officers further testified that they observed the presence of empty beer bottles and materials that could properly be classified as drug paraphernalia in the debris field that would have been produced from Holloman's vehicle. Based upon that testimony, the court specifically noted the existence of the recent decision in McDuff but held that these facts established probable cause to have the samples drawn. This Court is satisfied that exigent circumstances existed that would negate the requirement for seeking a formal warrant to draw the fluid samples; these circumstances including the fact that there were a limited number of investigating officers working a major vehicle accident that involved serious injuries to the two drivers and a fatality to one passenger and the fact that drug and alcohol content in a person's system can dissipate over the period of any delays incurred in obtaining and serving the warrant.
¶ 11. The trial court's determination of probable cause is reviewed on appeal on an abuse of discretion standard. Parker v. State, 606 So.2d 1132, 1137-1138 (Miss.1992). By that standard, we see no basis to disturb the trial court's ruling that *56 probable cause existed to draw fluid samples from Holloman, thereby rendering admissible the results of the scientific testing of these samples.

III.

Admissibility of the State's Accident Reconstructionist's Testimony
¶ 12. The trial court accepted the State's witness, Brady McMillen, as an expert in the field of accident reconstruction and permitted McMillen to testify concerning his determinations as to the course and speed of Holloman's vehicle in the period immediately preceding the accident. McMillen testified that he reached such conclusions based on his observations of the physical phenomena at the scene and his training and experience in the field of accident reconstruction.
¶ 13. In this appeal, Holloman urges that the court erred in permitting McMillen to testify as an expert in the field. In his argument on this point, Holloman briefly recites McMillen's credentials that were offered into evidence in order to establish him as an expert in the field, and appears to be contending that, on the face of the record, the State failed to establish McMillen as a qualified expert as to the matters he proposed to testify about. He offers no concrete criticism as to exactly how McMillen fell short in his training and experience, which included rather extensive education in fields related to mathematics, physics, and numerous courses in various aspects of vehicular accident investigation. McMillen further testified that, as a result of his training, he had been certified as an accident reconstructionist by the Mississippi Highway Patrol. When offered the opportunity to voir dire McMillen as to his credentials as an expert in accident reconstruction, defense counsel declined. The trial court thereupon accepted McMillen as an expert witness.
¶ 14. In this appeal, Holloman's only citation to authority is a reference to a federal case where the trial judge disallowed the expert testimony of an alleged accident reconstructionist in a civil trial. Wilson v. Woods, 163 F.3d 935 (5th Cir. 1999). That case dealt strictly with the qualifications, or lack thereof, of the proposed expert in accident reconstruction. The Fifth Circuit, conceding the discretion given to the trial judge in controlling the admissibility of evidence, simply found that the court had not erred in disallowing the testimony of an inexperienced novice in the field. More particularly, the appellate court said:
The district court's finding that Rosenhan lacked the requisite qualifications is supported in the record. Appellees' voir dire and the court's own questioning revealed significant deficiencies in Rosenhan's experience and professional training, leading ineluctably to the impression that his "expertise" in accident reconstruction was no greater than that of any other individual with a general scientific background.
Id. at 938.
¶ 15. Mississippi, like the federal courts, affords substantial discretion to the trial courts in ruling on the admissibility of evidence, including the qualifications of experts. Hall v. State, 611 So.2d 915, 918 (Miss.1992). While the federal district court judge, in a passage quoted by the Fifth Circuit in its opinion and re-quoted by Holloman in his brief, questioned the very existence of a field of expert knowledge identifiable as accident reconstruction, two things are clear. First, the Fifth Circuit did not decide the case on that basis, rather, that court merely agreed with the trial judge that Rosenhan lacked sufficient experience in the field to give him any specialized knowledge that would *57 be helpful to the jury. Second, the Mississippi Supreme Court has repeatedly sanctioned the use of qualified experts to offer opinion testimony in the field of reconstructing the events leading up to a vehicular accident. See, e.g., McCollum v. State, 785 So.2d 279, 284 (¶ 17) (Miss.2001); Wilson v. State, 574 So.2d 1324, 1335 (Miss. 1990).
¶ 16. The difference in the qualifications, training and experience of the proposed expert in Wilson v. Woods and Officer McMillen is substantial. We do not detect the sort of abuse of discretion that would require this Court to intercede in the trial court's decision to permit McMillen to testify as an expert.

IV.

The Defense Expert
¶ 17. Holloman proposed to call Dr. Shirley Sanders, who was prepared to testify that the known facts regarding the presence of drugs in Holloman's system were insufficient to make a medical determination that Holloman was "under the influence" of either of the narcotic substances set out in the indictment at the time of the accident. According to Holloman's brief, Sanders would have testified that
the medical community had not yet developed any standard scientific methods of measuring and demonstrating the effects certain drugs such as methamphetamine and cocaine have on the human body. She would have testified that although no such standard scientific methods or procedures had been developed, since the state had not offered any testimony or proof on the amounts of methamphetamine or cocaine in the system of the appellant the proving of impairment or that appellant had been driving under the influence of the controlled substances at the time of the wreck was impossible.
¶ 18. The State's primary objection to Dr. Sanders's testimony was that Holloman had failed to reveal the thrust of her expert testimony in discovery. The trial court, however, correctly dealt with the issue under rules relating to discovery violations rather than summarily excluding the witness. The court permitted the defense to proffer Dr. Sanders's intended testimony and ultimately elected to exclude it on the basis that, in the court's view, it would not assist the trier of fact and could tend to confuse them. Dr. Sanders's proffered testimony was essentially along the lines set out in the above quote from Holloman's brief.
¶ 19. We do not find that the trial court abused the discretion afforded it in such matters in that ruling. The State, after all, did not purport to offer scientific evidence as to the quantity of drugs discovered in Holloman's system and to provide expert opinion that the levels discovered were sufficient to meet the "under the influence" provisions of the statute under which he was charged. The term in the statute is not a scientific term in all events, and the State's proof tending to indicate that Holloman's abilities to function were affected by the narcotic substances was not of the scientific sort. Rather, it consisted of the observed evidence of his unusual behavior shortly before the accident and the fact that he was driving erratically and at a dangerously high rate of speed just moments before impact.
¶ 20. Dr. Sanders's testimony, if presented to the jury, would have essentially stood for the proposition that it is, under the present state of medical research, impossible to scientifically determine whether a person who has ingested the narcotic substances at issue in this case is under *58 their influence. Were that the case, and were that the sole method of proving such an allegation under the statute, then the conclusion is unavoidable that a conviction for causing an accident while under the influence of illegal narcotics would be impossible. While medical science may not be able to inform us as to exactly what level of particular narcotics must be ingested to safely lead to the conclusion that the user is under the influence of the drug, the similar issue of whether a person is under the influence of alcohol has for many years been routinely submitted to the jury based on evidence other than scientific testing. Ricks v. State, 611 So.2d 212, 218 (Miss.1992). Such determinations can properly be based upon observed behavior and the common understanding of jurors that persons under the influence of certain chemical substances, whether alcohol or narcotics, behave in ways that are different from the average person. We see no basis to draw a distinction between narcotic use and alcohol use and we decline to do so. Since the State did not attempt to prove the level of Holloman's impairment through expert testimony relating to the measured quantity of drugs found in his system, we tend to agree with the trial court that expert testimony that such an endeavor would, in all events, have been impossible under current medical science could only have served to confuse and mislead the jury as to the issues it was charged to resolve. We do not find error in this ruling.

V.

Sufficiency of the Evidence
¶ 21. Holloman claims that the evidence was insufficient as a matter of law to prove beyond a reasonable doubt that he was under the influence of cocaine and methamphetamine at the time of the accident. In reviewing such a claim on appeal, this Court must review all the evidence and consider it in the light most favorable to upholding the verdict of the jury. Milano v. State, 790 So.2d 179, 187(¶ 31) (Miss.2001). Only if we are satisfied that, as to one or more of the essential elements of the crime, the proof was so lacking that a reasonable juror fairly considering the evidence could only have found Holloman not guilty may we intercede. Blocker v. State, 809 So.2d 640, 644(¶ 16) (Miss.2002).
¶ 22. Holloman's argument on this point closely parallels the issue raised in regard to the excluded testimony of Dr. Sanders. He contends that all the State showed was the presence of a measurable level of methamphetamine and cocaine in his system together with the fact that he was involved in a vehicular accident. His contention is that evidence of the mere presence of such drugs does not prove that he was "under the influence" of those narcotic substances within the meaning of the statute. What that argument misses is the evidence presented to the jury that Holloman was observed by an acquaintance in the hours before the accident to be behaving in an unusual manner and evidence that in the moments before the accident he was driving on the wrong side of the road in an erratic manner at a high rate of speed.
¶ 23. On the related question of determining whether a person was under the influence of alcohol, the Mississippi Supreme Court has granted substantial leeway to the finders of fact in making such a determination and has placed the threshold for such a determination notably low, taking judicial notice that the presence of even small amounts of alcohol can cause an almost imperceptible impairment that, nevertheless, "may spell the difference between accident or no accident...." Allen v. Blanks, 384 So.2d 63, 67 (Miss.1980).
*59 ¶ 24. This Court can discover no reasoned basis to make a distinction between the discretion afforded the finders of fact in Allen v. Blanks and the discretion properly allowed the jurors in this case. We are satisfied that the uncontroverted evidence that Holloman had ingested illegal narcotics that were still present in measurable quantities in his body, together with evidence of remarkably unusual behavior and his demonstrably reckless operation of a motor vehicle were enough, when considered in conjunction, to support a reasonable inference by the jurors that Holloman was, in fact, under the influence of the narcotic substances at the time of the fatal accident.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF VEHICULAR HOMICIDE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH THE LAST TEN YEARS SUSPENDED AND THE FIRST FIVE YEARS OF THE SUSPENDED SENTENCE TO BE SERVED ON POST RELEASE SUPERVISION AND THE LAST FIVE YEARS ON PROBATION AND THE ORDER TO PAY $4500 TO THE CRIME VICTIMS' RESTITUTION FUND IS AFFIRMED. SAID SENTENCE SHALL RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. COSTS OF THIS APPEAL ARE ASSESSED TO APPELLANT.
SOUTHWICK, P.J., THOMAS, LEE, IRVING, MYERS, AND BRANTLEY, JJ., CONCUR. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES AND CHANDLER, JJ.
KING, P.J., dissenting:
¶ 26. I dissent and would reverse and remand this case.
¶ 27. Holloman maintains that the State failed to prove the elements of the offense charged pursuant to Miss.Code Ann. Section 63-11-30(5) (Rev.1996).[1] The indictment states:
On or about April 17, 1999, in the County and State aforesaid, and within the jurisdiction of this Court, did unlawfully, wilfully and feloniously drive or otherwise operate a motor vehicle on Highway 322 in Clarksdale, Mississippi, while under the influence of methamphetamine and cocaine, and did, in a negligent manner, cause the death of Megann [sic] Williams, a human being....
Holloman suggests that the State's charge as cited in the indictment is itself defective such that it could not be proven solely upon the facts and elements presented in the State's case. Holloman indicates through a discussion with the court that the indictment does not clearly show which subsection under which he is charged. The trial court acknowledges that Holloman is charged under Miss.Code Ann. Section 63-11-30(5) (Rev.1996), but attempts to determine what subsection (1) of the statute actually refers to:
THE COURT: The Court notes that subsection one of 63-11-30 is broken *60 down into (a), (b), (c), (d) and (e). (E) has to do with blood alcohol content of people with commercial driver's licenses; (a) has to do with driving under the influence of intoxicating liquor. Neither of those is involved in this case.
. . .
(B) says: "It's unlawful for a person to drive who is under the influence of any other substance which has impaired such person's ability to operate a motor vehicle." (D) says: "Is under the influence of any drug or controlled substance, the possession of which is unlawful under the Mississippi controlled substance law."
I'm not sure what (b) refers to, because it would just be whether it's legal or illegal, and that section uses the word impair. Section (d) says: "Under the influence of any illegal drug."
It's this Court's understanding of that section is that all that needs to be proved is that an illegal drug has been used by the person and that the person has operated in a negligent manner. I think those are the two things this jury has to find. I don't think they have to find that the illegal substance actually impairs the person's ability, because it's illegal to have or use those substances by law. And, therefore, if a person has used them, he's under the influence of them, and he's violated the law.
Holloman contends that because the indictment charged him with being "under the influence" of the controlled substances methamphetamine and cocaine, the State was required to prove that these substances "influenced and/or impaired" his driving to such an extent that he caused the collision and subsequent death of Megan Williams "beyond a reasonable doubt." Holloman claims that the State failed to present evidence regarding any physical or mental condition which impaired his driving ability before the collision.
¶ 28. The sole testimony offered by the State of Holloman's mental impairment was that of Stacy Vanlandingham who testified that when she saw Holloman at the store a couple of hours prior to the accident he was "extremely hyper." Her testimony does not give any indication of the circumstances confronting Holloman when she described his behavior as being "hyper." By her own admission, Ms. Vanlandingham did not speak to Holloman, she did not attempt to determine what was going on which might have caused him to act in a manner which she described as hyper. She also testified that she had only seen Holloman "maybe two or three" times prior to the day of the accident.
¶ 29. Vandlandingham's testimony was contradicted by Holloman's wife who testified that as he left home shortly before the accident, he acted absolutely normally.
¶ 30. The accident reconstructionist provided evidence of Holloman's driving when he stated that Holloman's car appeared to have been "traveling at a minimum speed of 82 miles per hour."
¶ 31. Accordingly, the record shows that evidence was presented of both Holloman's mental impairment and driving ability prior to the accident. The question before this Court is, how was this evidence to be evaluated at the directed verdict stage.
¶ 32. Because Holloman also challenges the trial court's denial of his motion for a directed verdict, we must consider the standard of review applicable to the trial judge's ruling at trial, which is:
In considering a motion for directed verdict, this Court must consider whether the "evidence in opposition to the motion was of such quality and weight that reasonable and fair-minded jurors in the *61 exercise of impartial judgment could differ as to the verdict." If so, the motion must be denied and the verdict will stand. If, however, the evidence is so overwhelmingly in favor of the appellant that reasonable persons could not have reached a different verdict, this Court must reverse.
McKinzie v. Coon, 656 So.2d 134, 137 (Miss.1995) (citations omitted).
¶ 33. When making his ruling on Holloman's motion for a directed verdict, the trial judge reasoned that through process of elimination, it appeared that Holloman was charged with Miss.Code Ann. Section 63-11-30(1)(d)(5) (Rev.1996). The State then took the position that it did not prove "impairment" nor was it required to do so. The State attempted to prove "under the influence" by showing the type of controlled substances in Holloman's blood and urine, and his behavior when observed prior to the accident. The trial judge agreed with the prosecutor and concluded that to prove "under the influence" all the State had to show basically was that Holloman had drugs in his system at the time of the accident and not that the drugs actually caused his negligent operation of the vehicle. Consequently, the State did not provide evidence of the amount of drugs in Holloman's system.
¶ 34. The indictment charged Holloman under Miss.Code Ann. Section 63-11-30(5) (Rev.1996), which provides that the State must prove that Holloman 1) negligently caused the death of Megan Williams, and that he caused Williams' death while 2) violating Miss.Code Ann. Section 63-11-30(1) (Rev.1996). Unfortunately, the indictment does not specify whether the State is proceeding under 1) Miss.Code Ann. Section 63-11-30(1)(b) (Rev.1996), which requires a showing that the defendant is under the influence of some substance, other than alcohol, "which has impaired such person's ability to operate a motor vehicle", 2) Miss.Code Ann. Section 63-11-30(1)(d) (Rev.1996) which requires a showing that the defendant "is under the influence of any drug or controlled substance, the possession of which is unlawful under the Mississippi Controlled Substances Law", or 3) some other provision listed under this particular subsection.
¶ 35. Under Miss.Code Ann. Section 63-11-30(5) (Rev.1996), the State must present sufficient evidence to establish that Holloman operated his motor vehicle in violation of Miss.Code Ann. Section 63-11-30(1) (Rev.1996). Holloman argues that this requires a further showing that he was under the influence of "any other substance" pursuant to Miss.Code Ann. Section 63-11-30(1)(b) (Rev.1996); but the State would also have to prove that the substance has impaired Holloman's ability to operate a motor vehicle. The record reflects that Holloman thought that he was indicted under this subsection.
¶ 36. However, during the trial, after the State presented its case against Holloman, the State revealed that it was proceeding under Miss.Code Ann. Section 63-11-30(1)(d) (Rev.1996). This occurred when the State responded to Holloman's motion for a directed verdict or dismissal of the indictment. Under this particular section, the State is not required to prove "impairment." Though under the language of the statute, the State must prove "under the influence" in either of these sections.
¶ 37. The trial court indicated that "mere presence" of a controlled substance is sufficient. The State indicated that it must prove that Holloman was "under the influence." The trial court did not explicitly address the issue of dismissal of the indictment nor did it acknowledge the ambiguity that exists due to the manner in which the indictment was drafted in this *62 case. However, a fair reading of the language contained in this indictment shows that Holloman could have been charged under either Miss.Code Ann Sections 63-11-30(1)(b) or (d)(5) (Rev.1996).
¶ 38. The distinction between the two provisions is that Miss.Code Ann. Section 63-11-30(1)(b) (Rev.1996) requires that the State prove that Holloman was "under the influence" of methamphetamine and cocaine, and that these drugs "impaired" his ability to operate his vehicle. Whereas, Miss.Code Ann. Section 63-11-30(1)(d) (Rev.1996) does not require a showing of "impairment," but requires a showing that Holloman was "under the influence" of methamphetamine and cocaine.
¶ 39. Whether the vagueness in the language presented is sufficient to quash the indictment is a separate issue altogether. Holloman was placed on notice that he was charged with "vehicular homicide," therefore, he was not harmed by the ambiguity of the language. Harbin v. State, 478 So.2d 796, 799 (Miss.1985). Accordingly, a dismissal of the indictment is not warranted.
¶ 40. However, when we consider the issue of sufficiency of proof, we must look at the point that if the defense counsel and the State could identify different versions of what the State must prove, then the jury could have reasonably been confused on what proof was sufficient on which to convict Holloman. If the jury was led to believe that "mere presence of drugs alone" was sufficient, without a further showing that Holloman was both impaired and negligent, then this conviction should not stand. Leuer v. City of Flowood, 744 So.2d 266(¶ 14) (Miss.1999). Miss.Code Ann. Section 63-11-30(5) (Rev.1996) specifically provides that:
Every person who operates any motor vehicle in violation of the provisions of subsection (1) of this section and who in a negligent manner causes the death of another or mutilates, disfigures, permanently disables or destroys the tongue, eye, lip, nose or any other limb, organ or member of another shall, upon conviction, be guilty of a felony and shall be committed to the custody of the State Department of Corrections for a period of time of not less than five (5) years and not to exceed twenty-five (25) years.
Miss.Code Ann. Section 63-11-30(5) (Rev. 1996).
¶ 41. While no Mississippi cases have specifically addressed the issue of driving "under the influence" of substances other than alcohol with a concise definition, the Leuer case attempted to define "under the influence" in an alcohol related incident, where the BAC test was not available to bring the offense within the statutory quantitative definition. In Leuer, the court referenced Government of Virgin Islands v. Steven, 134 F.3d 526, 528 (3rd Cir.1998) as secondary legal authority, where the court stated:
That courts have recognized for over half a century that driving "under the influence" is commonly understood to mean driving in a state of intoxication that lessens a person's normal ability for clarity and control.
Leuer v. City of Flowood, 744 So.2d 266 (¶ 14) (Miss.1999).
¶ 42. The Mississippi Supreme Court also pointed to certain specific behavior and actions noted in Leuer and determined that "common understanding and practice recognize that Leuer's behavior here is most consistent with being `under the influence' of intoxicating liquors, and thus clearly supports his conviction for DUI." Here, the court listed the behavior such as an officer observing Leuer running off the road, making a left turn into the middle of the roadway at 2:30 a.m. and an officer *63 smelling the odor of alcohol on Leuer's breath along with observing his glassy eyes as evidentiary support for the conviction. Leuer, 744 So.2d 266 at (¶ 12). This suggests that evidence must exist which shows that Holloman was "driving in a state of intoxication that lessens a person's normal ability for clarity and control." Leuer, 744 So.2d 266 at (¶ 11).
¶ 43. In the present case, the court should have required the State to prove, not only that the drugs methamphetamine and cocaine were in Holloman's system in trace amounts, but that these substances lessened Holloman's normal ability for clarity and control. Id. Accordingly, I, would reverse and remand this case to the Coahoma County Circuit Court for further proceedings.
BRIDGES AND CHANDLER, JJ., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] Miss.Code Ann. Section 63-11-30(5) (Rev. 1996):(5) Every person who operates any motor vehicle in violation of the provisions of subsection (1) of this section and who in a negligent manner causes the death of another or mutilates, disfigures, permanently disables or destroys the tongue, eye, lip, nose or any other limb, organ or member of another shall, upon conviction, be guilty of a felony and shall be committed to the custody of the State Department of Corrections for a period of time of not less than five (5) years and not to exceed twenty-five (25) years.