# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00075-COA

**DENNIS STEVEN RUSHING, ADMINISTRATOR
OF THE ESTATE OF DENNIS HOUSTON
RUSHING, DECEASED**
           **APPELLANT**

**v.**

**MOBILE FOREST PRODUCTS, INC., AN
ALABAMA CORPORATION AND DASON
ARRINGTON**
           **APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/19/2017 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | GREENE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WAYNE DOWDY |
| | DUNBAR DOWDY WATT |
| ATTORNEYS FOR APPELLEES: | J. STEPHEN KENNEDY |
| | SAMUEL DEUCALION GREGORY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 08/06/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE J. WILSON, P.J., TINDELL AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1. This case involves the tragic death of Dennis Houston Rushing (Dennis), who was a paramedic riding as a passenger in an ambulance when it crashed into an eighteen wheeler. Dennis's father, Steven Rushing (Steven), brought a wrongful-death lawsuit against Charles Bexley (the driver of the eighteen wheeler) and his employer, Henderson Timber Felling Inc. (Henderson). Steven later added two other defendants to the suit—Dason Arrington (the driver of the eighteen wheeler following Bexley) and his employer, Mobile Forest Products

Inc. (Mobile Forest). Before trial, Steven settled his claims against Bexley and Henderson. Following a trial, the jury found that Arrington was not negligent. Steven appeals, arguing that (1) the circuit court erred in admitting the ambulance driver's blood-test results into evidence; and (2) the circuit court erred in denying jury instruction P-5. Finding the circuit court acted within its discretion, we affirm.

**FACTS**

¶2.     On June 24, 2014, Bexley was driving an eighteen wheeler northbound on Highway 63 in Greene County.[1] Arrington was driving another eighteen wheeler behind Bexley.[2] Bexley planned to make a left turn, so he used his CB radio to notify Arrington. Bexley then put on his left blinker and slowed down in anticipation of the turn. Arrington also began to slow down.

¶3.     Meanwhile, unbeknownst to Bexley or Arrington, William Smith was driving an ambulance on Highway 63 and was quickly approaching both eighteen wheelers in the northbound lane. Smith and his passenger, Dennis, were both paramedics traveling to an elderly woman's home.[3] Smith was driving over the speed limit (55 miles per hour) at a rate of 75 miles per hour. As Smith approached both eighteen wheelers, he attempted to pass

---

[1] Bexley, acting within the course and scope of his employment, was transporting a bulldozer for Henderson.

[2] Arrington, acting within the course and scope of his employment, was driving a wood chip truck for Mobile Forest.

[3] The record is unclear as to whether the 911 call was an emergency.

2

them by switching to the southbound lane. However, Bexley had already begun making his left turn. The ambulance struck Bexley's eighteen wheeler on its front-left side near the fuel tank and caught fire on impact. Both Smith and Dennis died from the fiery crash. Arrington's eighteen wheeler was not involved in the collision.

¶4. On August 11, 2014, Steven, Dennis's father and administrator of his estate, brought a negligence suit against Bexley and Henderson. Steven amended the complaint on May 19, 2015, adding Arrington and Mobile Forest. Steven claimed that Arrington was negligent for failing to come to a stop on the right side of the road when the ambulance passed Arrington in violation of Mississippi Code Annotated section 63-3-809(1) (Rev. 2013). He also claimed that Arrington failed to comply with Mississippi Code Annotated section 63-3-619(2) (Rev. 2013), which requires a driver of a motor truck to maintain at least a 300-feet distance behind another motor truck. Before trial, Steven settled his claims against Bexley and Henderson.

¶5. At trial, Arrington testified that Bexley radioed him when they were near the Piave Baptist Church. He also testified that he was about one car length behind Bexley at that time. As Bexley started to slow down, Arrington distanced himself even more—about the length of an eighteen wheeler. Arrington testified that he was at least one hundred yards (300 feet) from Bexley's eighteen wheeler before the accident happened. Arrington never heard sirens

3

and did not see the ambulance approaching.[4]

¶6.　Dr. John Stevenson, an employee at the Mississippi Forensics Laboratory, was admitted as an expert in forensic toxicology and the testing of blood samples and called as a defense witness.  He testified that he received Smith's and Dennis's blood samples from the State Medical Examiner's Office after the accident.  Dr. Stevenson testified that the blood sample from Smith, the ambulance driver, tested positive for amphetamine and methamphetamine.

¶7.　Ultimately, the jury found that Arrington was not negligent and returned a verdict for Arrington.  Steven appeals.

## ANALYSIS

### 1.　Blood Test Results

¶8.　Steven argues that the circuit court erred in allowing Smith's blood test results into evidence because their prejudicial effect outweighed their probative value.  He bases his argument on the fact that the results reflected a qualitative, not quantitative, amount.

¶9.　Before Dr. Stevenson testified, plaintiff's counsel objected to the admission of Smith's blood-test results into evidence, arguing the results had no probative value.  The court overruled the objection.  When Dr. Stevenson received the blood samples, he first performed a blood-alcohol analysis, which involved "screening" for a class of drugs. Smith's

---

[4] Four other witnesses testified that they saw the ambulance pass the church and heard its sirens.

4

blood sample tested positive for amphetamine and methamphetamine. Dr. Stevenson testified that the results were qualitative. He also testified that amphetamine and methamphetamine could remain in a blood sample for two to four hours.

¶10. The standard of review for the admission or exclusion of evidence is an abuse of discretion. *Utz v. Running & Rolling Trucking Inc*., 32 So. 3d 450, 457 (¶4) (Miss. 2010). Our supreme court "has held evidence of blood alcohol levels to be admissible in automobile negligence cases." *Estate of Hunter v. Gen. Motors Corp.*, 729 So. 2d 1264, 1277 (¶46) (Miss. 1999) (quoting *Allen v. Banks*, 384 So. 2d 63, 67 (Miss. 1980)).

¶11. In *Holloman v. State*, 820 So. 2d 52, 59 (¶24) (Miss. Ct. App. 2002), this Court held there was "no reasoned basis to make a distinction [from *Allen*]" when the intoxicating substance was methamphetamine rather than alcohol. The defendant in *Holloman* appealed his vehicular homicide conviction, challenging the State's evidence that he was "under the influence" of cocaine and methamphetamine when the accident occurred. *Id*. at 58 (¶21). Holloman claimed that the mere presence of such drugs did not prove he was "under the influence" of those narcotic substances. *Id*. at (¶22). This Court compared Holloman to a person under the influence of alcohol, explaining that:

> [T]he Mississippi Supreme Court has granted substantial leeway to the finders of fact in making such a determination and has placed the threshold for such a determination notably low, taking judicial notice that the presence of even small amounts of alcohol can cause an almost imperceptible impairment that, nevertheless, "may spell the difference between accident or no accident . . . ."

*Id*. at (¶22) (quoting *Allen*, 384 So. 2d 63, 67 (Miss. 1980)).

¶12.    More recently, in *Utz*, our supreme court dealt with nearly the exact issue in the present case. *Utz*, 32 So. 3d 450. In *Utz*, Preston Utz collided with an eighteen wheeler and died. *Id*. at 456 (¶1). His widow brought a wrongful-death action against the driver of the eighteen wheeler and his employer. *Id*. At trial, the widow filed a motion in limine to exclude expert testimony showing that her husband had methamphetamine in his blood at the time of the collision. *Id*. at 459 (¶16). The circuit court denied her motion, and she appealed. *Id*. On appeal, our supreme court affirmed the circuit court's decision, holding the jury was entitled to consider the testimony and "judg[e] the expert's opinion in the context of all of the evidence in the case and 'the jury's own general knowledge of affairs . . . .'" *Id*. at (¶¶16-19) (quoting *Flight Line Inc. v. Tanksley*, 608 So. 2d 1149, 1166 (Miss. 1992)).

¶13.    Here, Dr. Stevenson testified that Smith's blood test results showed he had methamphetamine in his system. He also testified that methamphetamine can remain in the blood for two to four hours. Dr. Stevenson was qualified as an expert. "Once a witness is qualified as an expert to render expert testimony, then it is within the province of the trier of fact to give weight and credibility to the testimony." *Utz*, 32 So. 3d at 459 (¶19) (quoting *Palmer v. Anderson Infirmary Benevolent Ass'n*, 656 So. 2d 790, 796 (Miss. 1995)). The jury, as the finder of fact, was able to consider Dr. Stevenson's testimony to determine whether Smith was impaired while driving the ambulance. Further, if the jury had found fault with Arrington, they would have been legally required to apportion fault pursuant to Mississippi Code Section 85-5-7 (Rev. 2011). The fact that a driver has methamphetamine

6

in his system is certainly a potential factor the jury may consider in apportioning fault. Accordingly, we find that the circuit court acted within its discretion in allowing Smith's blood test results into evidence.

### 2. Jury Instruction P-5

¶14. Steven next argues that the court erred in denying jury instruction P-5. Steven's theory of liability against Arrington was that he was "negligent per se" by failing to come to a stop on the right side of the road when the ambulance passed Arrington in violation of Mississippi Code Annotated section 63-3-809(1) (Rev. 2013) and failing to maintain at least 300 feet distance between him and Bexley in violation of Mississippi Code Annotated section 63-3-619(2) (Rev. 2013). Jury instruction P-5 read as follows:

> The Court instructs you that the driver of any vehicle is chargeable with knowledge of all conditions which would be obtainable by the reasonable exercise of his faculties. It is his duty to see that which is in plain view or open and apparent and to take notice of obvious dangers. He must be regarded as having seen what he would have necessarily seen had he been looking. If the vehicle driver fails to reasonably observe that which was apparent and within clear view, the jury can reasonably determine from the circumstances that the driver was not keeping a proper lookout. The driver is charged with the absolute duty of seeing what he should have seen.

¶15. This Court reviews the grant or denial of jury instructions for an abuse of discretion. *Young v. Guild*, 7 So. 3d 251, 259 (¶23) (Miss. 2009). "In considering whether the grant or refusal of an instruction constitutes reversible error, we read the instructions actually given as a whole and will not reverse a verdict so long as the instructions, taken together, fairly announce the law of the case and create no injustice." *Id.* at 476 (¶81) (citing *Mariner*

*Health Care Inc. v. Turner ex rel. Estate of Edwards*, 964 So. 2d 1138, 1154 (¶42) (Miss. 2007)).  The jury received the following relevant instructions:

> You are instructed by the Court that violations of traffic laws and safety statutes may constitute negligence as a matter of law. In this case, the Defendants have been charged by the Plaintiff with violating a law that requires drivers of other vehicles, when an ambulance is approaching and giving audible signal by sirens, to be driven to the right-hand edge of the highway, stop, and remain stopped until the ambulance has passed.
>
> If you find from a preponderance of the evidence in this case that:
>
> (1) The Defendant Mobile Forest Products, Inc., acting by and through its agent/employee, Dason Arrington, while operating an eighteen wheeler wood chip truck and trailer, failed to comply with Mississippi law because Arrington did not, upon the immediate approach of an ambulance when the ambulance driver was giving audible signal by siren, yield the right-of-way and failed to immediately drive to a position parallel to, and as close as possible to the right-hand edge of the highway, and failed to stop and remain in such stopped position until the ambulance had passed; and
>
> (2) The Defendants' failure to comply with this regulation was a proximate contributing cause of Plaintiff's injuries, then your verdict shall be for the Plaintiff.  However, if you find that the Plaintiff has failed to prove any of these elements by preponderance of the evidence in this case, then your verdict shall be for the Defendants.
>
> . . . .
>
> The Court instructs you that the driver of any motor truck when traveling upon a roadway outside of a business or residence district shall not follow within 300 feet of another motor truck. If you find from the preponderance of the evidence in this case that Dason Arrington drove his truck within 300 feet of the preceding truck, and that his failure to apply this requirement of the law was a proximate contributing cause of Plaintiff's injuries, then your verdict may for the Plaintiff.

¶16.    The jury was clearly instructed on Mississippi Code Annotated sections 63-3-809(1)

and 63-3-619(2). Reading the jury instructions as a whole, we find that the instructions fairly announce the applicable law in this case. Thus, the circuit court did not abuse its discretion in denying jury instruction P-5.

## CONCLUSION

¶17.     We find the circuit court did not abuse its discretion in admitting Smith's blood test results into evidence. We further find the circuit court did not abuse its discretion in denying jury instruction P-5. Therefore, we affirm.

¶18.     **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, McCARTY AND C. WILSON, JJ., CONCUR.**