# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01463-COA

**JOHN LAGARY SMITH**                                                          APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                                          APPELLEE

DATE OF JUDGMENT:                    09/25/2018
TRIAL JUDGE:                                HON. DAVID H. STRONG JR.
COURT FROM WHICH APPEALED:    PIKE COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:        OFFICE OF STATE PUBLIC DEFENDER
                                                 BY: ERIN ELIZABETH BRIGGS
                                                 JOHN LAGARY SMITH (PRO SE)
ATTORNEY FOR APPELLEE:            OFFICE OF THE ATTORNEY GENERAL
                                                 BY: SCOTT STUART
DISTRICT ATTORNEY:                     DEE BATES
NATURE OF THE CASE:                   CRIMINAL - FELONY
DISPOSITION:                               AFFIRMED - 03/17/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE J. WILSON, P.J., TINDELL AND C. WILSON, JJ.**

**C. WILSON, J., FOR THE COURT:**

¶1.     John Lagary Smith was convicted of aggravated driving under the influence (DUI) of intoxicating substances, causing death.  On appeal, he argues that the evidence was insufficient to show that he was under the influence of intoxicating substances while operating his vehicle, that the indictment was improperly amended, and that his trial counsel's assistance was ineffective.  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On the rainy night of March 18, 2016, around 8 p.m., Smith was driving a Dodge Dart

on Highway 24 in Pike County, Mississippi, when he crossed the center line and collided head-on with a Chevrolet truck driven by eighty-two-year-old Leroy Alexander. Highway Patrol Officer Craig James responded to the scene. Officer James found Alexander deceased in his vehicle. An autopsy later determined that Alexander's cause of death was blunt-force trauma from the impact of the crash.

¶3. Because the accident resulted in a fatality, Highway Patrol Trooper Steven Causey, an accident reconstructionist, was dispatched to the scene. After Smith was transported from the scene to a local emergency room, Officers James and Causey drove to the emergency room to continue their investigation. Officer James testified that Smith was awake and alert at the hospital. However, Officer James observed that Smith "seemed nonchalant, just not really caring about the situation. . . . [It was] just not a normal reaction to a traffic crash of this seriousness."

¶4. At Officer James's request, Smith consented to having his blood drawn. Joe Ellington, a toxicologist with the Mississippi Crime Lab, testified that Smith's blood tested positive for the presence of Delta-9-THC (the active ingredient in marijuana), methamphetamine, and amphetamine. Ellington testified that Smith was under the influence of these substances when his blood was drawn at the hospital. He further testified that the presence of amphetamine, a breakdown product of methamphetamine, meant that the methamphetamine had been ingested "fairly recently" and had begun to be processed by Smith's body. On cross-examination, Ellington discussed the difference between "under the influence" and "impairment" and stated that he could not offer an opinion on Smith's

2

impairment. Ellington explained:

> In order to determine impairment you have to visually see the person. I would never be able to determine impairment because I'll never see the person or how they're acting. Instead I am able to determine if someone was under the influence by determining what drugs were in their system.

¶5. Smith was arrested and charged with aggravated DUI for Alexander's death. A Pike County Circuit Court jury found Smith guilty as charged. Smith was sentenced to twenty years in the custody of the Mississippi Department of Corrections, with fourteen years to serve, six years suspended, and five years of post-release supervision. He was fined $5,000 and ordered to pay restitution for the expense of the expert witnesses retained for the case. Smith moved for a judgment notwithstanding the verdict (JNOV) or, alternatively, a new trial. The Court denied the motion, and Smith timely appealed.

¶6. On appeal, Smith's appointed counsel contends that the evidence was insufficient to support the verdict. Smith filed a pro se supplemental brief in which he also challenges the sufficiency of the evidence. Their separate arguments on this issue will be addressed together. Smith raises two other issues pro se: (1) that the court erred in allowing substantive amendments to the indictment; and (2) that his trial counsel's assistance was ineffective.

## DISCUSSION

### I. Sufficiency of the Evidence

¶7. Smith, through counsel and pro se, argues that the evidence was insufficient to support his aggravated DUI conviction. Although it is undisputed that Smith had ingested marijuana and methamphetamine prior to the crash, Smith argues that the State failed to prove that his use of these substances affected his ability to drive.

3

¶8. "When reviewing challenges to the sufficiency of the evidence, we view all evidence in the light most favorable to the State." *Thomas v. State*, 277 So. 3d 532, 535 (¶11) (Miss. 2019). We will affirm the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Cotton v. State*, 144 So. 3d 137, 142 (¶11) (Miss. 2014)). The State is given the benefit of all reasonable inferences in the evidence. *Id.*

¶9. To prove Smith guilty of aggravated DUI causing death, the State was required to show that Smith caused Alexander's death in a negligent manner while unlawfully operating a vehicle. *See* Miss. Code Ann. § 63-11-30(1), (5) (Supp. 2015). Relevant to this case, section 63-11-30(1) states:

> (1) It is unlawful for a person to drive or otherwise operate a vehicle within this state if the person:
>
> . . . .
>
> (b) Is under the influence of any . . . substance [other than intoxicating liquor] that has impaired the person's ability to operate a motor vehicle; [or]
>
> (c) Is under the influence of any drug or controlled substance, the possession of which is unlawful under the Mississippi Controlled Substances Law . . . .

¶10. The jury was instructed as follows:

> [I]f you believe from the evidence in this case, beyond a reasonable doubt, that on or about March 18, 2016, in Pike County, Mississippi, [Smith] did wilfully, unlawfully and feloniously, in a negligent manner, cause the death of Leroy Alexander, a human being, with a motor vehicle, at a time when [Smith] was operating the motor vehicle while under the influence of intoxicating substances, the possession of which is unlawful under Mississippi law, then you should find [Smith] "Guilty as charged[.]"

4

¶11. "The phrase 'under the influence' commonly is understood to mean 'driving in a state of intoxication that lessens a person's normal ability for clarity and control.'" *Warwick v. State*, 179 So. 3d 1069, 1073 (¶14) (Miss. 2015) (quoting *Leuer v. City of Flowood*, 744 So. 2d 266, 269 (¶11) (Miss. 1999)). Smith argues that the State presented no evidence to show how marijuana and methamphetamine affect a person or that either drug would lessen a person's normal ability for clarity and control. Smith asserts that the positive lab results alone were insufficient to prove that he was "under the influence" of marijuana or methamphetamine.

¶12. We disagree that the State failed to present sufficient proof that Smith was under the influence of marijuana and methamphetamine, such that his normal ability for clarity and control were lessened. The officer who responded to the scene, Officer James, testified that he went to the emergency room, where Smith was being treated after the accident, to finish his initial investigation. Officer James stated that approximately an hour and a half after the wreck, Smith was awake, alert, and cognizant enough that he was able to consent to having his blood drawn. The nurse who drew Smith's blood testified consistently. However, Officer James clarified that Smith's condition in the emergency room did not mean that Smith could safely drive a vehicle. He testified that Smith "seemed nonchalant, just not really caring about the situation," and that Smith's reaction was "just not a normal reaction to a traffic crash of this seriousness." Officer James further testified that he requested Smith's consent to draw his blood to test for drugs or alcohol, even though Officer James had not noticed any narcotics in Smith's vehicle, because of "the state [Smith] was in at the

5

time."

¶13.    Officer Causey testified that based on his reconstruction of the accident scene, Smith's and Alexander's vehicles were traveling toward each other on the highway in opposite lanes. Smith's vehicle then crossed the center line and entered Alexander's lane, causing the front left side of Smith's vehicle to impact the front left side of Alexander's vehicle. Officer Causey testified that the impact occurred approximately a foot and a half to two feet from the white fog line on the edge of Alexander's lane of travel. When the impact occurred, the two right-side tires of Alexander's vehicle were off the roadway in the grass. Officer Causey testified that the road was wet because it had been raining, but the road was not holding water.

¶14.    Alexander's daughter testified that Alexander left home the evening of the wreck to go to the store, as was his daily routine. She stated that prior to Alexander's leaving the house, she did not notice any health issues or problems that would have affected his ability to drive. Alexander's blood tested negative for drugs and alcohol.

¶15.    Ellington, the toxicologist, testified that Smith was under the influence of methamphetamine and marijuana at the time his blood was drawn and that amphetamine was also present in Smith's body. Ellington explained that amphetamine is produced after methamphetamine is ingested and starts to be broken down by the body. Ellington testified that the presence of both methamphetamine and amphetamine in Smith's body meant that he had ingested the methamphetamine "fairly recently," leading Ellington to conclude that Smith was under the influence of methamphetamine at the time his blood was drawn.

6

Ellington further testified that Smith was under the influence of marijuana and had "1.4 nanograms per mil of the Delta-9-THC," the parent component of marijuana, in his system.

¶16.    Smith takes issue with Ellington's lack of testimony regarding impairment. He further asserts that although several witnesses testified to their visual observations of Smith after the wreck, none observed "any classic signs of impairment." With regard to Ellington's testimony, Smith specifically argues that Ellington failed to testify whether "1.4 nanograms per mil of Delta-9-THC" impaired Smith's "ability to think clearly." He also asserts that Ellington failed to perform a quantitative analysis on the amount of methamphetamine present in Smith's system,[1] and Ellington gave no testimony on the effects of methamphetamine on a person.

¶17.    Smith's contentions are misplaced. Ellington testified that Smith was "under the influence" of several illegal substances based on an analysis of Smith's blood taken an hour and a half after the accident. The State was not required to present expert testimony on the effects of the drugs on Smith's ability to operate a vehicle. Ultimately, that is not a question for an expert but rather is one for the jury to determine. *Holloman v. State*, 820 So. 2d 52, 58 (¶23) (Miss. Ct. App. 2002).

¶18.    In *Holloman*, Ronald Holloman was convicted of vehicular homicide for negligently causing a vehicle accident resulting in death while under the influence of one or more controlled substances. *Id*. at 54 (¶7). On appeal, Holloman made an argument similar to

---

[1] Ellington testified that after the initial drug screen, there was not enough blood left in the sample drawn from Smith to perform a quantitative analysis on the amount of methamphetamine present.

7

Smith's here regarding the State's alleged failure to show that he was under the influence of narcotics at the time of the accident. *Id.* Holloman asserted that the evidence was insufficient to support his conviction because "all the State showed was the presence of a measurable level of methamphetamine and cocaine in his system together with the fact that he was involved in a vehicular accident." *Id.* at 58 (¶22). He argued that proof of the "mere presence" of narcotics was insufficient to show he was "under the influence" of those narcotics. *Id.* However, this Court found that Holloman failed to account for the evidence that "Holloman was observed by an acquaintance in the hours before the accident to be behaving in an unusual manner and evidence that in the moments before the accident he was driving on the wrong side of the road in an erratic manner at a high rate of speed." *Id.*

¶19. In affirming the conviction in *Holloman*, we noted that in the context of determining whether a defendant is guilty of driving under the influence of alcohol, "the Mississippi Supreme Court has granted substantial leeway to the finders of fact in making such a determination and has placed the threshold for such a determination notably low, taking judicial notice that the presence of even small amounts of alcohol can cause an almost imperceptible impairment that, nevertheless, 'may spell the difference between accident or no accident.'" *Id.* at (¶23) (quoting *Allen v. Blanks*, 384 So. 2d 63, 67 (Miss. 1980)). This Court found "no reasoned basis to make a distinction between the discretion afforded the finders of fact" when determining whether a defendant had driven under the influence of narcotics. *Id.* at 59 (¶24).

¶20. In this case, the State presented sufficient evidence for the jury to determine that

8

Smith's "normal ability for clarity and control" was lessened. *Warwick*, 179 So. 3d at 1073 (¶14). The State presented Ellington's expert testimony that Smith was under the influence of marijuana, methamphetamine, and amphetamine. The State further presented Officer James's testimony that Smith's behavior following the wreck was "nonchalant" and "not a normal reaction," given the serious nature of the wreck, and that Officer James's observations of Smith's behavior led him to request Smith's consent for a blood sample. The State also presented Officer Causey's testimony that Smith was driving on the wrong side of the road when his vehicle collided with Alexander's vehicle and that the collision occurred one and a half to two feet from the fog line in Alexander's lane of travel. As stated, in reviewing the evidence the jury is given "substantial leeway," and "the threshold for . . . a determination [of impairment is] notably low." *Holloman*, 820 So. 2d at 58 (¶22).

¶21. Giving the State the benefit of all reasonable inferences in the evidence, we find that a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Thomas*, 277 So. 3d at 535 (¶11). The evidence is thus sufficient to sustain Smith's aggravated DUI conviction, and this issue is without merit.

## II. Amendments to the Indictment

¶22. In his pro se supplemental brief, Smith argues that his indictment was illegally amended. Preliminarily, we note that Smith has failed to cite any authority for the issues he raises in his pro se supplemental brief. This Court is not obligated to review issues that are not properly supported by authority; thus, Smith has waived this issue on appeal. *Arrington v. State*, 267 So. 3d 753, 756 (¶9) (Miss. 2019). Notwithstanding, we also find this issue

9

without merit.

¶23.    "[C]ourts may amend indictments only to correct defects of form; however, defects of substance must be corrected by the grand jury." *Weeks v. State*, 123 So. 3d 373, 377 (¶7) (Miss. 2013) (quoting *Patton v. State*, 109 So. 3d 66, 80 (¶44) (Miss. 2012)).  An amendment to the indictment "is permissible if it does not alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant's case." *Id.*  "The test for whether an amendment to the indictment will prejudice the defense is whether the defense as it originally stood will be equally available after the amendment is made." *Id.* (quoting *Patton*, 109 So. 3d at 81 (¶44)).

¶24.    Smith's original indictment was titled "Indictment for the Offense of Operation of Motor Vehicle While Under Influence of *Intoxicating Liquor* Resulting in Death." (Emphasis added).  On the morning of trial, the State moved to amend the title of the indictment to reflect that Smith was charged with being under the influence of "intoxicating substances"—as stated in the body of the indictment—rather than "intoxicating liquor." The State argued that the amendment was to form only and was necessary to correct a clerical error.  The circuit court granted the State's motion, and the title was amended to reflect "intoxicating substances" rather than "intoxicating liquor."

¶25.    After the State presented its case-in-chief, Smith moved for a directed verdict, arguing in part that the State had failed to prove that he was under the influence of "intoxicating substances," as charged in the amended indictment.  Smith argued that the State did not

10

present proof of "intoxicating substances," as set out in section 63-11-30(1)(b), but only "controlled substances," as set out in section 63-11-30(1)(c). The State then moved again to amend the indictment to reflect that the intoxicating substances referenced in the indictment were marijuana and methamphetamine. The circuit court granted the motion, and the second amended indictment read that Smith was "under the influence of intoxicating substances, including marijuana and methamphetamine, contrary to and in violation of Section 63-11-30(1) and (5) . . . ."

¶26.    In allowing the second amendment to the indictment, the circuit court relied on *Tott v. State*, 822 So. 2d 1084, 1087-88 (¶¶5, 9) (Miss. Ct. App. 2002), where this Court upheld an amended indictment that added the words "including marijuana" after the words "under the influence of some other substance." The defendant in *Tott* argued that the amendment was one of substance rather than form because it implicated a different subsection of section 63-11-30(1). This Court found no merit to this argument. *Tott*, 822 So. 2d at 1087-88 (¶¶8-9). We found that the defendant had not shown prejudice in having to defend against the amended indictment because the Mississippi Supreme Court has made clear that the different subsections of section 63-11-30(1) do not set forth different crimes; rather, "[section] 63-11-30 merely sets forth numerous methods of committing the same crime." *Id.* at 1087 (¶8) (quoting *Young v. City of Brookhaven*, 693 So. 2d 1355, 1358 (Miss. 1997)).

¶27.    We likewise find that Smith has not shown surprise or prejudice from the amendments to the indictment. In rejecting Smith's argument on this issue, the circuit court stated, "[A]ll parties have been on notice this was a case about marijuana and methamphetamine the entire

11

time. And to argue otherwise is disingenuous . . . . [T]here has never been a question about what this case was about." The proof at trial only related to Smith's use of marijuana and methamphetamine, and the report from the Mississippi Crime Lab, which was available to Smith prior to trial, only showed positive test results for marijuana, methamphetamine, and amphetamine. The amendments did not materially alter the essential facts of the offense or prejudice Smith's defense. Accordingly, this issue is without merit.

### III. Ineffective Assistance of Counsel

¶28. Finally, in his pro se supplemental brief, Smith argues that his trial counsel's assistance was ineffective for failing to object to the amendments to the indictment and failing to argue that there was no evidence that he was under the influence of drugs at the time of the wreck. Again, Smith cites no authority in support of his argument, which waives the issue for appeal. *Arrington*, 267 So. 3d at 756 (¶9). Irrespective of the waiver, we will briefly address this issue.

¶29. Ordinarily, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings because insufficient evidence may exist within the record on direct appeal to address the claim adequately. *Bowlin v. State*, 154 So. 3d 883, 886 (¶8) (Miss. 2015). We generally only address ineffective-assistance-of-counsel claims "on direct appeal when '(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.'" *Williams v. State*, 228 So. 3d 949, 952 (¶12) (Miss. Ct. App. 2017) (quoting *Johnson v. State*, 196 So. 3d 973,

975 (¶7) (Miss. Ct. App. 2015)). Here, the parties have not stipulated that the record is sufficient to review this issue on direct appeal, and the record does not show ineffectiveness of constitutional dimensions.

¶30. In order for Smith to show affirmatively that his counsel's assistance was ineffective, Smith "must prove that his attorney's performance was deficient, and that the deficiency was so substantial as to deprive [him] of a fair trial." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984)). On the face of the record before us, we cannot find an affirmative showing or absence of ineffectiveness of counsel. "[W]e therefore deny relief without prejudice as to [Smith's] right to pursue this claim during postconviction proceedings." *Id.* at 952-53 (¶14). Smith's conviction and sentence are affirmed.

¶31. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**